FILED by \_\_\_ D.C.
ELECTRONIC

**DEC 31, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PARADISE DIVERS, INC., a Florida
Corporation,

CASE NO. _____

## 08-10116-CIV-MARTINEZ/BROWN

        Plaintiff,

vs.

ACE AMERICAN INSURANCE
COMPANY,

        Defendant.

_____/

## COMPLAINT

Paradise Divers, Inc. (hereinafter "Paradise Divers"), pursuant to Fed. R. Civ. Proc. 7, hereby asserts the following Complaint against ACE American Insurance Company (hereinafter "ACE"):

### Jurisdictional Allegations

1.    Paradise Divers is a Florida corporation with its principal place of business located in Monroe County, Florida.

2.    ACE is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania and, at all times material hereto, was and is duly licensed to conduct business in the State of Florida.

3.    Paradise Divers seeks compensation through this action for damages in excess of $75,000.

4.    This Court has federal diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332.

**Factual Allegations**

**The Vessel Insurance Policy Issued Through the FADO Program**

5.      CIGNA, the predecessor in interest to ACE, issued to Paradise Divers a Recreational Marine Inspected Vessel Charter Policy, Number SPC6139905, with effective dates of November 25, 1999 to November 25, 2000 ("the Policy").

6.      The Policy was delivered to Paradise Divers at its business address: 38801 Overseas Highway, Big Pine Key, Florida 33043.

7.      A true and complete copy of the Policy is attached as Exhibit 1.

8.      Upon information and belief, through the timeframe relevant to this action, claims adjusting for the Policy was handled by INAMAR, ACE/INA, or ACE American Insurance Company.

9.      As the successor in interest to CIGNA, ACE is legally responsible for the actions of any and all entities which engaged in claims handling on its behalf related to the Policy issued to Paradise Divers.

10.      Paradise Divers was, at the time it purchased the CIGNA policy, a member of a trade organization called the Florida Association of Dive Operators ("FADO").

11.      The Policy at issue in this action was purchased by Paradise Divers through a program promoted by FADO to its members, which consisted mostly of Florida dive shops and/or their owners and management personnel.

12.      The FADO dive shop policies were issued by CIGNA with the involvement of an insurance agency located in Brentwood, Tennessee called Gale Smith & Co.

13.    Upon information and belief, ACE sold similar or identical policies to numerous FADO member dive shops located throughout the state of Florida.

14.    The ACE policy form used in the FADO program contains coverage for liability pursuant to the Jones Act or general maritime law for an unlimited number of paid crew members.

15.    The exclusions applicable to the liability coverage provided by the policy form excludes: "swimmers and divers of any kind...."

16.    The policy does not define "swimmers," "divers," or "paid crew."

17.    Paradise Divers paid additional premium for an endorsement entitled "Captain and Crew Limitation Endorsement."

18.    The Captain and Crew Limitation Endorsement stated: "We will pay sums which you or a covered person becomes legally obligated to pay as a result of the ownership, operation or maintenance of the insured craft during this policy period, for liability to a captain or crew member provided for under The Jones Act or general maritime law."

19.    The Captain and Crew Limitation Endorsement contained its own exclusions, and did not exclude coverage for swimmers and divers, or contain any other exclusion applicable to the provision of coverage for liability to Kevin Upmal, who was a Paradise Divers crew member when he was injured in the water on June 29, 2000.

20.    The Captain and Crew Limitation Endorsement limited coverage to two captain/crew members aboard the vessel at any given time, a substantial limitation which was not contained in the liability coverage provided by ACE's standard policy form.

Paradise Divers v. ACE American Insurance Co.
Complaint

21. ACE charged additional premium in conjunction with the issuance of the Captain and Crew Limitation Endorsement, instead of a credit to the account, because the endorsement provided for Jones Act and general maritime liability coverage to crew members working on dive shop operators' vessels both in and out of the water.

22. In addition to offering the insurance program through which policies were issued by ACE, FADO advertised to its members that one of the benefits of membership would be access to a "legal defense team and referral service for legal problems."

23. FADO sponsored informational seminars regarding lawsuit risk management given by Donna Albert, Esq., an attorney who, upon information and belief, focuses her practice in the defense of personal injury actions against dive shops.

### The Accident

24. On June 29, 2000, Kevin Upmal, an employee of Paradise Divers, was injured snorkeling while Paradise Divers' customers, all certified scuba divers, were submerged on the first of two morning dives.

25. Upon information and belief, Mr. Upmal suffered from a shallow water blackout.

26. On the day of the accident, Mr. Upmal was a crew member of the M/V Paradise Diver IV, acting that day as the First Mate on the vessel.

27. Mr. Upmal was discovered and removed from the water by one or more of the shop's customers.

28.     First Aid and oxygen were immediately provided to Mr. Upmal, who was taken to the nearest docking facility for transport to Fisherman's Hospital in Marathon, Florida.

29.     Ultimately, Mr. Upmal was transported by helicopter to Baptist Hospital in Miami, Florida and treated there.

### The Claim to ACE and its Response

30.     On the same day as the accident, Paradise Divers contacted FADO and its insurance agent and was advised by both to contact Ms. Albert.

31.     Ms. Albert immediately began representing Paradise Divers, advising Paradise Divers to identify draft reports as "work product" and to label correspondence as attorney-client privileged communications.

32.     Paradise Divers and its representatives believed Ms. Albert was Paradise Divers' lawyer, and believed that she worked for FADO on its members' behalf.

33.     In reliance on the belief that Ms. Albert represented Paradise Divers, Paradise Divers shared confidences with Ms. Albert, allowed her access to its employees and records, followed her advice, and refrained from retaining other legal counsel.

34.     Paradise Divers also gave access to its employees and records to Craig Jenni, who Paradise Divers understood to be an investigator working with Ms. Albert at FADO's offices.

35.     Paradise Divers sent several faxes to Ms. Albert and Mr. Jenni, both directed to FADO.

36.     Neither Ms. Albert nor Mr. Jenni ever indicated to Paradise Divers that they did not work for FADO and were, in fact, investigating the claim on ACE's behalf.

37.     Several weeks after Mr. Upmal's release from the hospital, medical providers began to bill Paradise Divers for Mr. Upmal's treatment.

38.     Ms. Albert advised Paradise Divers not to pay Mr. Upmal's medical bills.

39.     Ms. Albert further advised Paradise Divers to send a letter to Mr. Upmal's medical providers informing them Paradise Divers was not responsible for the payment of their bills.

40.     In reliance upon Ms. Albert's advice, Paradise Divers drafted a disclaimer letter and forwarded it to Ms. Albert for her approval.

41.     Ms. Albert approved the proposed disclaimer letter.

42.     In reliance upon Ms. Albert's advice, Paradise Divers mailed disclaimer letters in the approved form to each medical provider that had sought payment from Paradise Divers.

43.     Meanwhile, Ms. Albert shared the results of her investigation and communicated with both ACE's claims personnel and its insurance brokers regarding the question of whether Upmal's claim against Paradise Divers was covered by the Policy.

44.     Subsequent to sending the approved disclaimer letters, Paradise Divers' representatives did not hear from Ms. Albert for some time.

45.     Concerned about the lack of communication, Paradise Divers' employee, Linda Kruszka, called Ms. Albert on the telephone.

46.     Ms. Albert verbally informed Ms. Kruszka that she could no longer represent Paradise Divers.

47.     Ms. Albert never informed Paradise Divers of the availability of an action for limitation of liability or informed Paradise Divers that its responsibility to pay maintenance and cure pursuant to general admiralty law applied regardless of fault.

48.     Ms. Albert never provided any explanation to Paradise Divers in writing regarding her reason for withdrawing from the representation.

49.     Upon information and belief, both Ms. Albert and Mr. Jenni were paid by ACE to investigate the claim on ACE's behalf.

50.     By virtue of their actions, and of ACE's communications with Ms. Albert regarding coverage issues, Ms. Albert and Mr. Jenni were agents of ACE at the time of their involvement in this matter.

51.     ACE controlled and/or was aware of Ms. Albert's and Mr. Jenni's activities, and although it was in the business of handling maritime claims, including those for maintenance and cure, ACE did nothing to independently inform Paradise Divers of its legal rights and obligations or of the relationship between Ms. Albert, Mr. Jenni, and ACE's claims department.

52.     Upon information and belief, the information gained by Ms. Albert and Mr. Jenni, whom Paradise Divers was led to believe were provided by FADO to act on Paradise Divers' behalf, was provided to ACE's claims adjuster for the purpose of determining coverage.

53.     Shortly after Ms. Albert's "withdrawal" from representing Paradise Divers, Paradise Divers received written notification from Roseann Williams, an ACE/INA claims adjuster, disclaiming coverage for both indemnity and the duty to defend.

54.     At the time of Ms. Williams' correspondence, no suit had been filed by Mr. Upmal, and the only demand he had made had been for the payment of his medical bills totaling approximately $45,000.

55.     Before the accident and for several months thereafter, the relationship between Mr. Upmal and Paradise Divers was friendly and mutually supportive.

56.     Mr. Upmal returned to work shortly after the accident, and he was given medical clearance to dive less than one month after the accident.

57.     Ms. Kruszka made several attempts to contact INA on Mr. Upmal's behalf to secure payment of his medical bills through the Policy's crew endorsement coverage.

58.     Each time, Ms. Kruszka was rebuffed.

59.     Ultimately, the unpaid medical bills had a negative effect on Mr. Upmal's credit, and he sought the assistance of counsel.

60.     Presumably due to his exceptional recovery, and minimal damages, several attorneys turned down Mr. Upmal's case before the law firm of Seiden, Alder & Matthewman agreed to represent him.

61.     Mr. Upmal was forced to file a lawsuit against Paradise Divers to get his medical bills paid, as a direct result of ACE's refusal to cover maintenance and cure on his behalf pursuant to the terms of the Policy.

62.     A policy limits demand was made by Mr. Upmal's counsel pre-suit. INA refused to offer any amount of money toward the claim, taking the position there was no coverage.

63.     On November 5, 2002, Mr. Upmal's counsel filed suit against Paradise Divers but did not serve the Complaint or inform Paradise Divers or its counsel of the filing.

64.     Upon information and belief, INA was either made aware of the suit by Mr. Upmal's counsel or otherwise learned the suit had been filed.

65.     INA did not inform Paradise Divers that a suit had been filed or even provide Paradise Divers with a copy of the Complaint, but did sue Paradise Divers, seeking a declaratory judgment determining that Mr. Upmal's claim was not covered (S.D. Fla. Case No. 02-10054 Civ Moore/O'Sullivan).

66.     Subsequently, INA changed the named Plaintiff in the declaratory judgment action to ACE.

67.     Mr. Upmal's lawsuit against Paradise Divers sought damages of over two million dollars, far in excess of the ACE policy's limits.

68.     After suit was filed by Mr. Upmal against Paradise Divers, ACE delayed assigning counsel until after CNA agreed to share the cost of defense.

69.     CNA, through its wholly owned subsidiary Colombia Casualty, provided coverage to Noel Kartman, the Captain of Paradise Divers' vessel, through an insurance program offered by PADI to dive instructors.

70.     The CNA certificate provided additional insured coverage to Paradise Divers through the following provision:

> 1) ADDITIONAL INSURED COVERAGE IS INCLUDED FOR ANY RETAIL DIVE STORE (INCLUDING ITS OWNERS OR PARTNERS), DIVE BOAT, EDUCATIONAL INSTITUTION, MARINA, GOVERNMENTAL ENTITY OR MUNICIPALITY, SWIMMING POOL FACILITY, LANDLORD, PROPERTY OWNER, DIVE RESORT, HOTEL OR MOTEL FROM WHICH AN INSTRUCTOR, ASSISTANT INSTRUCTOR OR DIVE MASTER OPERATES. HOWEVER, THIS ADDITIONAL INSURED PROTECTION SHALL IN ALL CASES BE LIMITED IN SCOPE TO APPLY ONLY TO THE REGULAR OPERATIONS OF THE NAMED INSURED IN CONNECTION WITH HIS OR HER TEACHING AND/OR SUPERVISING OF SCUBA OR SNORKELING ACTIVITIES, SANCTIONED AND APPROVED BY PADI.

71.     A copy of the Noel Kartman's CNA policy is attached as Exhibit 2.

72.     CNA's coverage was limited to liability arising out of Noel Kartman's actions, and did not cover Paradise Divers' maintenance and cure obligations to Mr. Upmal.

73.     If ACE had paid maintenance and cure to cover Mr. Upmal's medical expenses in a timely manner (or at all), there would have been no lawsuit filed by Mr. Upmal.

74.     All expenses incurred by CNA arising out of Upmal's lawsuit, including attorney's fees and expenses paid on Paradise Divers' behalf, fees and costs paid to CNA's coverage counsel, and ultimately the $500,000 paid by CNA to settle part of Upmal's claim against Paradise Divers, were incurred as a direct result of ACE's failure to pay Upmal's claim for maintenance and cure against Paradise Divers.

75.     On June 12, 2003, summary judgment was granted against ACE in its declaratory judgment action.

76.     One aspect of the Court's summary judgment ruling was a conclusion that defense costs eroded the limits of the coverage provided under the Captain and Crew Limitation Endorsement, so the more the defense costs mounted, the less coverage would be available to pay Mr. Upmal's claim.

77.     ACE filed an appeal of the Court's ruling, which it later withdrew.

78.     After withdrawing the Complaint, ACE attempted to replace Paradise Divers' mutually agreeable defense counsel with the law firm of Shook Hardy and Bacon, a Miami firm that is well known for the quality of its lawyers as well as its high fees, but which is not known for admiralty law experience.

79.     At that time, CNA was still providing a defense under a reservation of rights and paying half the defense costs.

80.     CNA was not consulted by ACE about its plan to replace Paradise Divers' defense counsel.

81.     Paradise Divers objected to ACE's plan to replace its defense counsel, at which time ACE installed counsel from Shook Hardy and Bacon, over Paradise Divers' objection, as co-counsel in the defense against Upmal's case.

82.     Paradise Divers was never asked to sign a letter of representation or a Statement of Insured Client's Rights related to Shook Hardy's involvement, as is required by Rules Regulating the Florida Bar 4-1.8(j).

83.     ACE took the position that once it withdrew its appeal and its reservation of rights, it had the unfettered right to control the defense and therefore could inject whatever counsel it wished into the matter, which had then been ongoing for some time.

84.    ACE ignored the fact that substantial conflicts of interest still existed between itself and Paradise Divers because there was the potential for a substantial excess verdict and because that potential became greater every day as defense costs mounted and limits of liability withered.

85.    Furthermore, by adding Shook Hardy to the defense team, ACE created a perception on the part of plaintiff's counsel that the case was worth a great deal to ACE, and so, like a shark smelling blood in the water, plaintiff's counsel became even more aggressive, further increasing the cost of defense and making it less likely the plaintiff would agree to settle within policy limits.

86.    Due to the continuing conflicts of interest between itself and ACE, Paradise Divers was forced to continue to incur costs and legal fees for the involvement of its independent counsel, the undersigned law firm, to monitor the underlying action to assure that its interests, as opposed ACE's interests, were being pursued by the defense.

87.    Ultimately, and after spending over $250,000 in defense costs, CNA settled parts of the Upmal action for $500,000 and ceased its payments toward the defense.

88.    After several additional months of litigation, ACE ultimately settled Upmal's claim against Paradise Divers.

89.    Being sued by its crew member affected Paradise Divers' reputation and harmed its ability to attract and retain referral business, which was the source of a great deal of its business.

90.     Being involved in litigation caused the principals of Paradise Divers to have to close the business at times when their presence was needed at depositions, mediations, and other litigation related events, causing the business to lose revenues.

91.     Ultimately, Paradise Divers became financially unable to continue its operations, and the business was closed.

### Count One:     Statutory Bad Faith

Paradise Divers realleges and incorporates by reference herein those allegations contained in paragraphs 1 – 91.

92.     The actions of ACE and its agents and predecessors in interest, including but not limited to its failure to pay Kevin Upmal's medical bills pre-suit, as well as its failure to attempt to resolve Upmal's maintenance and cure claim against Paradise Divers prior to his filing suit, resulted in Kevin Upmal's suing Paradise Divers and seeking damages far in excess of approximately $45,000 which was owed in medical bills.

93.     ACE's failure to settle or even to attempt to settle these claims violated Fla. Stat. §624.155 and constituted statutory bad faith under Florida law.

94.     Had ACE settled the maintenance and cure claim pre-suit, when it could have been settled, there would have been no lawsuit and CNA would not have become obligated to defend Paradise Divers or ultimately to expend $500,000 to settle aspects of Upmal's claim against Paradise Divers to protect Paradise Divers' and its own interests.

95.     ACE's behavior through the course of the Upmal litigation, including its injection of the Shook Hardy law firm into the defense team, over Paradise Divers'

objection, caused a continued need for independent counsel to protect Paradise Divers' interests, causing Paradise Divers to incur substantial additional attorney's fees.

96.    Paradise Divers served a Civil Remedy Notice upon ACE, and 60 days passed without ACE's paying the claim or correcting the circumstances. A true and correct copy of Paradise Divers' Civil Remedy Notice is attached as Exhibit 3.

97.    Coverage was determined by this Court in a prior action.

98.    CNA has assigned its rights against ACE to Paradise Divers. A true and correct copy of the Assignment of Rights is attached as Exhibit 4.

99.    Upon information and belief, ACE's failure to settle the maintenance and cure claim, relying upon the "swimmers and divers" exclusion which did not apply to the Captain and Crew Limitation Endorsement for which additional premium was charged, constituted a business practice.

100.   Paradise Divers served a Civil Remedy Notice upon ACE as CNA's assignee on November 25, 2002. Sixty days passed without ACE having paid the claim or corrected the circumstances. A true and correct copy of the Civil Remedy Notice served by Paradise Divers as CNA's assignee is attached as Exhibit 5.

101.   As a result of ACE's bad faith in the handling of Upmal's claim, Paradise Divers sustained extensive damages including but not limited to lost revenues, costs and attorney's fees, and the ultimate loss of its business.

102.   As a result of ACE's bad faith in the handling of Upmal's claim, CNA was forced to incur costs, attorney's fees, and the cost of settling aspects of Upmal's claim. These expenses totaled over $750,000.00.

Paradise Divers v. ACE American Insurance Co.
Complaint

103.    All conditions precedent to this action have been fulfilled.

WHEREFORE, Paradise Divers demands final judgment against ACE, both on its own behalf and as assignee of CNA, for all foreseeable damages, consequential damages, punitive damages, pre-judgment interest, costs, attorney's fees incurred both in the Upmal action and in this action, and any such further relief as may be provided by law.

### Count Two: Breach of Fiduciary Duty / Common Law Bad Faith

Paradise Divers incorporates herein the allegations contained in paragraphs 1 through 103.

104.    *The Fiduciary Duty:* Through the contractual and common law obligations created by ACE's insurance policy which obligated ACE to provide a defense to Paradise Divers, and vicariously through the conduct of its agents, Ms. Albert and Mr. Jenni, ACE owed Paradise Divers the following duties, which are fiduciary in nature:

a)    To promptly investigate the claim in an independent and dispassionate fashion;

b)    To avoid conflicts of interest in handling of claims against its insureds;

c)    To comply with the obligations imposed by the law incident to the duty to defend, including conducting its investigation and defending claims against Paradise Divers in good faith and with due regard for Paradise Divers' interests, and placing Paradise Divers' interests ahead of any interests claimed by ACE;

d)    To assign mutually agreeable counsel to defend Paradise Divers;

e)   To advise Paradise Divers of any conflict of interest between Paradise Divers and ACE;

f)   To promptly, fully, and fairly advise Paradise Divers of its litigation positions, and, in particular, about situations that would expose Paradise Divers to liability;

g)   To only assert positions in good faith, supported by existing law and not in conflict with settled law;

h)   To promptly advise Paradise Divers of any settlement opportunities that ACE or its agents were aware of;

i)   To attempt to settle Mr. Upmal's claim against Paradise Divers where it could and should have done so while acting in the best interest of Paradise Divers;

j)   To instruct or warn Paradise Divers of the possibility of non-covered liability, and to advise Paradise Divers as to any steps it may take to avoid such potential liability.

105.   Paradise Divers trusted ACE to fully and fairly comply with its contractual obligations as well as the fiduciary obligations imposed by law and by the terms of the ACD policy.

106.   Paradise Divers justifiably relied upon ACE to arrange its defense and protect it from liability.

107.   ACE breached its fiduciary duties to Paradise Divers in several ways, including:

a)    Conducting its investigations of Paradise Divers' claim through agents who misrepresented their status to Paradise Divers, leading Paradise Divers to believe they were, in fact, acting as Paradise Divers' defense counsel;

b)    Failing to provide Paradise Divers with mutually agreeable defense counsel once suit was filed by Mr. Upmal;

c)    Failing to attempt to settle Mr. Upmal's claim within policy limits when it could and should have done so in the best interest of its insured, Paradise Divers;

d)    Failing to inform Paradise Divers of actions it may have taken to limit its potential liability, including but not limited to failing to advise Paradise Divers of its right to file an affirmative claim for limitation of liability to he value of the vessel;

e)    Advising Paradise Divers, through its agent, Donna Albert, o disclaim responsibility for Mr. Upmal's medical bills, which advice, if found to have been improper, carries the risk of subjecting Paradise Divers not only to the cost of the medical bills but also potential liability for interest, attorney's fees, and punitive damages;

f)    After this Court's declaration determined there was eroding limits coverage for the claim ACE contended was not covered, injecting counsel into the matter whose involvement was to protect the interests of ACE, not Paradise Divers, over Paradise Divers'

objection and without the execution of a Statement of Insured Client's Rights.

108.    ACE and/or its agents' failure to protect Paradise Divers' interests and to inform Paradise Divers of actions it might take to protect its own interests resulted in Paradise Divers' being sued and in the payment of settlement monies to Mr.Upmal far in excess of that which was sought by Upmal prior to the filing of suit against Paradise Divers.

109.    ACE's acts and omissions in the handling of this claim evidenced a reckless indifference to, and a wanton and callous disregard for, Paradise Divers' rights pursuant to the policy, and constituted a continuous course of deliberate, overt, ad dishonest dealing towards Paradise Divers.

WHEREFORE, Paradise Divers demands judgment awarding damages against ACE as follows:

a.    Compensatory damages, including but not limited to all unpaid fees and costs incurred in the defense of the declaratory judgment action and subsequent appeal, as well as and any and all expenses incurred by Paradise Divers and CNA in defense of Mr. Upmal's suit against Paradise Divers, as well as fees and costs paid by CNA to its coverage counsel, together with prejudgment interest on such fees and costs;

b.    The attorney's fees and costs incurred in prosecuting this action;

c.    Such other and further relief as this Court deems appropriate; and

d.    Punitive or exemplary damages.

## DEMAND FOR JURY TRIAL

Plaintiff, Paradise Divers, Inc. hereby demands a trial by jury of all issues so triable as a

matter of right.

Dated this *30th* day of December, 2008.

Respectfully Submitted,

_____

Counsel for Plaintiff Paradise Divers, Inc.

Michelle M. Niemeyer
Fla. Bar No. 119628
Michelle M. Niemeyer, P.A.
3250 Mary Street, Suite 302
Coconut Grove, FL 33133
Phone  (305) 443-1818
Fax     (305) 443-8368

Paradise Divers v. ACE American Insurance Co.
Complaint

# EXHIBIT  1

*Diver III*

*Nov 25, 1999 to Nov 25, 2000*

# CIGNA Recreational Marine
# Inspected Vessel Charter Policy

## *National Association of Charterboat Operators (NACO)*







**CIGNA** Property
& Casualty
Specialty Insurance

*A Business of Caring.*

# CHARTER POLICY
# QUICK REFERENCE

**DECLARATIONS PAGE**
- Your Name and Address ....................................1
- Your Insured Property .....................................1
- Policy Period.................................................1
- Coverages .....................................................1
- Amounts of Insurance ......................................1
- Deductible ....................................................1
- Lay-Up Warranty ...........................................1
- Limits on Use ................................................1
- Loss Payee.....................................................1

**AGREEMENT AND DEFINITIONS**
- Agreement ....................................................3
- Definitions ...................................................3

**PART A:**
**PROPERTY DAMAGE COVERAGE**
- Perils Insured Against.....................................4
- Exclusions.....................................................4
- Equipment on Shore ......................................4
- Deductible Amount ........................................4
- Loss Settlement..............................................4
- Property Subject to Depreciation.....................5
- Salvage Charges.............................................5
- Commercial Towing and Assistance ...............5

**PART B:**
**LIABILITY COVERAGE**
- Perils Insured Against.....................................5
- Exclusions.....................................................5
- Limits of Liability ..........................................6

**PART C:**
**MEDICAL PAYMENTS COVERAGE**
- Perils Insured Against.....................................6
- Exclusions.....................................................6
- Loss Settlement..............................................6
- Medical Payments Proof-of-Loss ....................6
- Additional Requirements ................................6
- Admission of Liability ....................................6

**PART D:**
**UNINSURED BOATER COVERAGE**
- Perils Insured Against.....................................7
- Exclusions.....................................................7
- Loss Settlement..............................................7

**PART E:**
**FEDERAL LONGSHOREMEN'S AND**
**HARBOR WORKERS'**
**COMPENSATION INSURANCE** ....................7

**PART F:**
**VESSEL TRAILER COVERAGE**
- Perils Insured Against.....................................7
- Exclusions.....................................................7
- Deductible Amount ........................................7
- Loss Settlement..............................................8

**PART G:**
**PERSONAL PROPERTY COVERAGE**
- Property Covered ...........................................8
- Causes of Loss Which Are Covered .................8
- Fishing Equipment Stored Ashore ..................8
- Exclusions.....................................................8
- Mysterious Disappearance ..............................8
- Deductible ....................................................8
- Loss Settlement..............................................8

**GENERAL CONDITIONS AND EXCLUSIONS**
- Policy Period.................................................8
- Extension of Coverage ...................................9
- Non-owned Vessel .........................................9
- Racing .........................................................9
- Broadening Coverage .....................................9
- Policy Premium and Renewal .........................9
- Changes in Policy..........................................9
- Conformity to State Law ................................9
- Cancelling the Policy .....................................9
- Return Premiums ..........................................9
- Use of Vessel ................................................9
- Captain Warranty..........................................9
- Passenger Warranty .......................................9
- Firearms Exclusion ........................................9
- Navigation Warranty .....................................10
- Lay-Up Warranty ..........................................10
- Seaworthiness Warranty.................................10
- Loss-of-Use Exclusion ...................................10
- Transfer of Interest .......................................10
- Concealment, Misrepresentation or Fraud ....10
- Dishonest, Illegal or Intentional Acts ...........10
- No Benefit to Others .....................................10
- War, Confiscation and Radioactive
  Contamination...............................................10

**GENERAL PROVISIONS IN**
**THE EVENT OF LOSS**
- Protection Against Loss .................................10
- Abandonment ...............................................11
- Notice of Loss ...............................................11
- Proof-of-Loss.................................................11
- Claim or Suit Against You .............................11
- Assistance and Cooperation...........................11
- Payment of Loss ............................................11
- Our Right to Recover ....................................11
- Salvage ........................................................11
- Suit Against Us .............................................12
- Other Insurance ...........................................12

# DECLARATIONS PAGE

(Attach Here)

*This is not a complete and valid insurance policy without an accompanying Declarations Page.*

1

CIGNA INSURANCE COMPANY - INSPECTED POLICY

POLICY # - SPC6139905  RENEWAL OF # - Same

NAMED INSURED AND ADDRESS:
   Paradise Divers, Inc
   38801 Overseas Hwy

   Big Pine Key        FL  33043

AGENCY CODE, NAME & ADDRESS:

   Charter Lakes Insurance Agency   *Dan*
   P.O. Box 8797
   Kentwood              MI  49518

POLICY PERIOD:
From: 11/25/99  To: 11/25/00    Beginning and ending at 12:01 A.M. Standard time at the place of issuance of this policy.
UPON THE INSURED BOAT:
Name -                          Hull ID # - D929003      Year - 1988 Length -  30 Manuf. - Island Hopper
Type - Cruiser                                                                    Model - Lobster
UPON THE ENGINES DESCRIBED AS:
1998 Cummins          Diesel 350 HP. IB S/N - 44980066
   0   S/N -                                            Value - INCLUDED
UPON THE BOAT TRAILER DESCRIBED AS:
   0   S/N -
UPON THE DINGHY(S) DESCRIBED AS:
THE INSURED BOAT WILL BE PRINCIPALLY MOORED OR BERTHED AT:
   Big Pine Key
LOSS, IF ANY, PAYABLE TO INSURED AND:                 *Inspected*

ADDITIONAL INSURED:

COVERAGE IS PROVIDED ONLY WHERE THE AMOUNT OF INSURANCE OR LIMIT OF LIABILITY IS SHOWN AND WHERE SPECIFIC PREMIUM CHARGES OR THE WORD 'INCLUDED' IS SHOWN.

| SECTION | COVERAGES | AMOUNT OF COVERAGE OR LIMIT OF LIABILITY | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| A | HULL & MACHINERY | AGREED VALUATION AND AMOUNT OF INSURANCE | $ 50,000.00 | $ 1,500.00 | $ 1,000.00 |
| A | TENDER | | $ 0.00 | $ 0.00 | $ 0.00 |
| A | TENDER | | $ 0.00 | $ 0.00 | $ 0.00 |
| B | PROTECTION AND INDEMNITY | LOSS OF LIFE, PERSONAL INJURY AND PROPERTY DAMAGE AGGREGATE, LIMIT OF LIABILITY | $1,000,000.00 | $ 1,000.00 | $ 576.00 |
| C | MEDICAL PAYMENTS | LIMIT OF LIABILITY ANY ONE PERSON | $ 5,000.00 | NIL | INCLUDED |
| E | L&HCA | WHATEVER IS REQUIRED UNDER THE LONGSHOREMEN'S AND HARBOR WORKER'S COMPENSATION ACT | INCLUDED | NIL | INCLUDED |
| F | TRAILER | | $ 0.00 | $ 0.00 | $ 0.00 |
| G | PERSONAL PROPERTY | LIMIT OF INSURANCE ANY ONE ACCIDENT | $ 0.00 | NIL | INCLUDED |
| | TOWING   *450* | *charge for over six passengers + 2nd crew member - different class of boat.* | $ 0.00 | $ 0.00 | $ 0.00 |
| | CREW LIABILITY | | $1,000,000.00 | $ 1,000.00 | $ 800.00 |
| | OTHER | SEE ENDORSEMENTS   MA-8301a , MA-3W43 | | $ | $ 350.00 |

*hurricane hull deductible*

LAYUP PERIOD:                                          TOTAL PREMIUM - $  2,726.00
   None
NAVIGATION LIMITS:
   WHILE AFLOAT THIS POLICY COVERS YOUR INSURED BOAT FOR LOSSES WHICH OCCUR ONLY WITHIN THE FOLLOWING NAVIGATION LIMITS:
   As per the vessels Coast Guard Certificate of Inspection
THIS POLICY IS MADE AND ACCEPTED SUBJECT TO THE FOREGOING STIPULATIONS AND CONDITIONS IN YACHT POLICY PART II TOGETHER WITH SUCH
STIPULATIONS AND CONDITIONS AS MAY BE ADDED HERETO BY ENDORSEMENT.

   COUNTERSIGNED 10/15/99,  AT Kentwood        MI  By: _____
                    THIS PART 1 WITH YACHT POLICY PART 2 COMPLETES THE ABOVE NUMBERED POLICY.
MA-9X50

*Added on renewal*

## CIGNA INSURANCE COMPANY

### CAPTAIN AND CREW LIMITATION ENDORSEMENT

This endorsement forms as part of:

```
        Policy Sum. and No:  SPC6139905
              Issued to:   Paradise Divers, Inc *
and is effective on and after:  11/25/99
                 Agent:   Charter Lakes Insurance Agency
```

It is hereby understood and agreed that the above mentioned policy is amended as follows:

We will pay sums which you or a covered person becomes legally obligated to pay as a result of the ownership, operation or maintenance of the insured craft during this policy period, for liability to a captain or crew member provided for under The Jones Act or general maritime law. This coverage, however, shall not apply to an owner, stockholder, officer, partner or any other person with an ownership interest, legal or equitable, in the insured craft.

The limit of liability shown for protection and indemnity on the declaration page is the maximum amount we will pay for all losses, legal fees and expenses as described above, resulting from any one accident or occurrence. This is the most we will pay regardless of the number of covered persons involved or claims submitted.

In consideration of the premium charged, it is warranted that there shall not be more than (2) two captain/crew member(s) employed aboard the vessel at any one time, excluding the owner operator or leasee of the vessel.

Also, warranted that in the event additional crew are to be employed, the Assured shall give prior notice to this company and pay such additional premium as is required. If the Assured shall fail to give such prior notice and at the time of loss in respects to crew there are more crew employed, the insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of the accident.

All other terms and conditions of this policy remain unchanged.

CHARTER LAKES INSURANCE AGENCY
P.O. Box 8797
Kentwood, MI   49508

MA8301a

## CIGNA INSURANCE COMPANY

### NAMED STORM DEDUCTIBLE ENDORSEMENT

This endorsement forms a part of:

| | |
|---|---|
| Policy Sum. and No: | SPC6139905 |
| Issued to: | Paradise Divers, Inc * |
| and is effective on and after: | 11/25/99 |
| Agent: | Charter Lakes Insurance Agency |

The following deductible provision is applicable to the Part A: Property Damage section of this policy;

We will apply a separate hull deductible to losses caused by wind, rain, wave or hail when those losses are the result of either a Tropical Depression, Tropical Storm, Hurricane or Nor'easter. This deductible will be in lieu of the property damage deductible shown on the Declarations Page, and will be applied to the amount of each loss. It will be applicable to all partial, total or constructive total losses.

DEDUCTIBLE AMOUNT: $ 2,500.00

DEFINITIONS:

"Tropical Depressions, Tropical Storms and Hurricanes" are defined as those so designated by the National Weather Service and/or the National Hurricane Center. Nor'easters are defined as those which are assigned storm numbers by the Federal Emergency Management Agency and/or declared disasters by the President of the United States.

All other terms and conditions remain unchanged.

CHARTER LAKES INSURANCE AGENCY
P.O. Box 8797
Kentwood, MI 49518-8797

MA-3W43 (6/95)

This page intentionally left blank.

# CHARTER POLICY

## AGREEMENT AND DEFINITIONS

### AGREEMENT

This is a legal contract between you and us. We will provide the insurance coverage described in this policy in return for the premium and the compliance by all covered persons with all applicable provisions of this policy.

### DEFINITIONS

Throughout this policy, *you* and *your* refer to the *named insured* as shown in the Declarations Page, and *we*, *us* and *our* refer to the *company providing this insurance*. In addition, certain words and phrases are defined as follows:

*Insured Property* is defined as:
a. the vessel(s) shown on the Declarations Page, including spars, sails, machinery, furniture, dinghies, outboard motors, fittings and other equipment normally required for the operation or maintenance of the vessel; moorings and cradles are excluded;
b. any vessel that you acquire ownership of during the Policy Period, however, you must notify us within 15 days of the time you acquire the vessel and pay any additional premium required; in the event of loss during this period, we will pay no more than its cost to you, or $150,000, whichever is less.

*Covered Person* is defined as you, or any person or legal entity operating your vessel(s) as shown on the Declarations Page, with your direct and prior permission. It does not include:
a. any paid captain or crew member;
b. any person or legal entity operating, or employed by, or the agent of a marina, boat repair yard, yacht club, sales agency, boat service station or other similar organization.

*Horsepower* is defined as that amount stated by the manufacturer as peak-developed horsepower as measured at the flywheel.

*Latent Defect* is a flaw in the material which is existing at the time of the building of the vessel or her machinery and which is not discoverable through ordinary methods of testing.

*Tropical Depressions, Tropical Storms, Hurricanes and Nor'easters* are defined as those so designated by the National Weather Service and/or the National Hurricane Center.

*Actual Cash Value* means the fair market value of the insured property at the time of loss.

*Sports Equipment* means jet skis, waverunners, snorkeling and scuba gear. It also includes water skis and other items designed for being pulled behind the insured vessel.

*Fishing Equipment* means rods, reels, tackle, lures, tackle boxes and coolers.

*Warranty* means an agreement in the policy or provided by law that must be strictly and literally complied with. A breach of a warranty voids the insurance contract during the term of such a breach.

*Uninsured Boater and Uninsured Owner-Operator* means any owner or operator of a vessel, other than the vessel named in this policy, who is legally responsible for the accident and:
a. to whom no liability policy applies;
b. who cannot be identified, such as a hit-and run-operator.

3

# PART A: PROPERTY DAMAGE COVERAGE

**PERILS INSURED AGAINST:** We will provide coverage for accidental, direct physical loss or damage to your insured vessel as well as salvage charges, except as specifically excluded in this policy.

**EXCLUSIONS:** We do not provide coverage under Part A: Property Damage Coverage against loss or resulting damage from:
a. wear and tear, gradual deterioration, weathering, insects, mold, animals or marine life;
b. marring, scratching or denting;
c. osmosis or blistering;
d. manufacturer's defects or defects in design;
e. the cost of replacing or repairing any item having a latent defect that causes damage to your insured property; however, resulting damage would be covered;
f. corrosion, except electrolytic (stray current) corrosion;
g. willful misconduct.

**EQUIPMENT ON SHORE:** We will provide coverage for all insured property removed temporarily from your vessel for storage on shore. The amount of insurance on the vessel will be reduced by the amount covered on shore.

**DEDUCTIBLE AMOUNT**
a. we will adjust each claim separately for a covered loss to your insured property; the amount of each adjusted claim will be automatically reduced by the Deductible Amount shown on the Declarations Page; no deductible will be applied in the event of a total loss to your vessel, except for conditions outlined in paragraph **b** below; for deductible purposes, we will treat any two or more covered losses resulting from the same accident or occurrence as one claim;
b. we will apply a separate property damage deductible to losses caused by wind, rain, wave or hail when those losses are the result of either a Tropical Depression, Tropical Storm, Hurricane or Nor'easter; this deductible will be in lieu of the Part A: Property Damage Coverage Deductible Amount shown on the Declarations Page, and will be applied to the amount of each loss; it will be applicable to all partial, total or constructive total losses; the deductible amount will equal three times the Part A: Property Damage Coverage Deductible Amount on the Declarations Page, or $2,500, whichever is greater.

**LOSS SETTLEMENT:** In the event of loss or damage to your insured property, we will pay the lowest of the following amounts:
a. the Part A: Property Damage Coverage limit as shown on the Declarations Page;
b. the cost of replacement;
c. the cost to repair with no deduction for depreciation, except as specified in the Property Subject To Depreciation section.

We will pay for a total loss to your vessel and other covered property only if:
a. the vessel is completely lost or destroyed;
b. the cost of recovering and/or repairing the vessel is greater than the amount of insurance shown on the Declarations Page.

The cost of repairs shall be determined by yacht repair yards, equipment repairers or surveyors agreeable to the company.

The amount we will pay for a total loss shall be reduced by any amount previously paid by us for a prior covered loss not repaired or replaced at the time of the total loss.

**PROPERTY SUBJECT TO DEPRECIATION:** In the event of loss or damage to your insured plastic or canvas coverings, inclusive of all-weather bridge and cockpit enclosures, and dodgers, sails, outboard motors or outdrive units, machinery inside the vessel which is over seven years old, or components of any of the preceding items which requires replacement or repair, we will pay the lesser of:
a. the actual cash value at the time of loss;
b. the cost to repair subject to depreciation;
c. the cost of replacement.

**SALVAGE CHARGES:** We will pay for salvage charges you incur arising from a covered loss, however, we will pay no more than the Part A: Property Damage Coverage limit, as shown on the Declarations Page.

**COMMERCIAL TOWING AND ASSISTANCE:** We will provide additional protection in the event there is an emergency situation where you and your vessel are not in imminent danger. The coverage shall be deemed in excess over all other valid and collectible insurance. We will reimburse you for the reasonable costs you incur, not to exceed a total of $500, resulting from the following services to your vessel if help is not available and you must obtain commercial assistance:
a. towing to the nearest place where necessary repairs can be made;
b. delivery of fuel, oil, parts or loaned battery (excluding the cost of these items themselves) or emergency labor, while away from safe harbor.

The policy deductible does not apply to this coverage.

## PART B: LIABILITY COVERAGE

**PERILS INSURED AGAINST:** We will pay sums that you or a covered person become legally obligated to pay as a result of the ownership, operation or maintenance of your insured vessel because of:
a. attempted or actual raising, removal or destruction of the wreck of your insured property;
b. failure to raise, remove or destroy the wreck of your insured property;
c. bodily injury or loss of life;
d. your liability to paid crew as defined in the Jones Act or under general Maritime Law;
e. loss or damage to any property;
f. pollution or contamination of any kind.

**EXCLUSIONS:** We do not provide coverage under Part B: Liability Coverage for:
a. liability of other covered persons to you, your spouse, or other persons who reside in your household;
b. your liability to your spouse, or other persons who reside in your household;
c. liability assumed by you under any contract or agreement;
d. liability that arises while your insured property is being conveyed except at the point the vessel is hauled out of the water or launched;
e. fines or other penalties that any government unit requires you to pay;
f. punitive damages;
g. bodily injury or property damage arising out of parasailing or scuba diving;
h. claims for which you may be held liable as a result of the sale, dispensing or consumption of alcoholic beverages on board the vessel insured by this policy; these exclusions include liabilities arising out of:
    (1) violation of a law or regulation that governs the sale, gift, distribution or use of alcoholic beverages
    (2) the selling, serving or giving of alcoholic beverages to a minor, a person under the influence of alcohol, or a person who causes or contributes to the intoxication of any person;
i. swimmers and divers of any kind, if any, either while embarking, after leaving the vessel(s) to enter the water, while in the water, towed behind the insured vessel, or while boarding the vessel(s) on the return from the water; in addition, this policy excludes all liability for injury, death or accidents from or in connection with any sales, service or use of diving equipment of any kind, or in any manner connected with diving or swimming activities.

5

LIMITS OF LIABILITY: We will pay no more than the Part B: Liability Coverage limit, as shown on the Declaration Page for all damage or losses resulting from:
a. any one accident or occurrence;
b. any series of accidents or occurrences arising out of the same event; this is the most we will pay regardless of the number of covered persons involved, claims made, vessels or premiums shown on the Declarations Page or the number of vessels involved.

With respect to pollution or contamination of any kind, we will pay up to the Part B: Liability Coverage limit as shown on the Declarations Page, or $500,000, whichever is greater.

## PART C: MEDICAL PAYMENTS COVERAGE

PERILS INSURED AGAINST: We will pay for reasonable medical, ambulance, hospital, professional nursing and funeral costs that become necessary due to accidental bodily injury to persons injured while in, upon, boarding, leaving or towed behind your insured vessel. We will pay only for those costs incurred within one year of the date of accident.

EXCLUSIONS: We do not provide coverage under Part C: Medical Payments Coverage for:
a. any employee of yours injured while in the course of employment or while using, maintaining or repairing your insured property;
b. any responsibility for payment assumed by you under contract or agreement;
c. anyone who is injured while your insured property is being conveyed, hauled out or launched;
d. anyone to or for whom benefits are payable under any state or federal compensation law or act;
e. anyone who is injured while parasailing or scuba diving;
f. swimmers and divers of any kind, if any, either while embarking, after leaving the vessel(s) to enter the water, while in the water, towed behind the insured vessel, or while boarding the vessel(s) on the return from the water; in addition, this policy excludes all liability for injury, death or accidents from or in connection with any sales, service or use of diving equipment of any kind, or in any manner connected with diving or swimming activities.

LOSS SETTLEMENT: We will pay no more than the Part C: Medical Payments Coverage limit, as shown on the Declarations Page for all covered costs of each person injured as a result of any one accident or series of accidents arising out of the same event. Any payment made under Part C: Medical Payments Coverage shall reduce the amount payable under Part B: Liability Coverage or Part D: Uninsured Boater Coverage.

MEDICAL PAYMENTS PROOF-OF-LOSS: A written, sworn proof of loss must be filed with us by any person seeking payment by us under the Part C: Medical Payments Coverage, or by someone on his/her behalf. This proof-of-loss must include:
a. the name and address of each person and organization performing covered services;
b. the nature, extent and dates of these services; and
c. itemized charges and any sums already paid.

This proof-of-loss must be filed:
a. as soon as reasonably possible after completion of services;
b. as soon as reasonably possible after the cost of services being provided equals the amount of our liability under Part C: Medical Payments Coverage on the Declarations Page;
c. within one year of the date of the accident, whichever of the above occurs first.

ADDITIONAL REQUIREMENTS: Each person seeking payment by us under Part C: Medical Payments Coverage must:
a. submit to a physical examination by a physician selected by us when and as often as we reasonably require; we will pay for the cost of the examination; and
b. provide us with written authorization for release to us of copies of pertinent medical reports and records.

ADMISSION OF LIABILITY: Any payment made under this section is not an admission of liability by you or us.

6

## PART D: UNINSURED BOATER COVERAGE

**PERILS INSURED AGAINST:** We will pay for the damages which, because of bodily injury received aboard your vessel, you are legally entitled to recover from the uninsured owner or operator of another vessel.

**EXCLUSIONS:** We do not provide coverage under Part D: Uninsured Boater Coverage:
a. for claims settled without our written consent;
b. if the uninsured vessel is owned by a government agency or unit;
c. for vessels owned by or furnished for your regular use, or the use of a member of your immediate family or any person insured by this policy;
d. for an insured using a vessel without permission;
e. where no evidence of physical contact exists between your vessel and an unidentified vessel, or where no evidence of physical contact exists between your vessel and an uninsured vessel.

**LOSS SETTLEMENT:** We will pay no more than the Part D: Uninsured Boater Coverage limit, as shown on the Declarations Page, regardless of the number of insured persons, claims made or vessels involved in any one accident or series of accidents arising out of the same event. This coverage will not apply directly or indirectly to the benefit of any insurer under any state or federal compensation law or act. Payment made for this coverage to or for an insured person will reduce the amount that person is entitled to recover from the Part B: Liability Coverage of this policy.

## PART E: FEDERAL LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION INSURANCE

When insurance is provided under Part B: Liability Coverage, insurance is also provided under this section. We will provide coverage for any liability which you, as owner of the insured property, incur during the term of the policy under Part E: Federal Longshoremen's and Harbor Workers' Compensation Insurance.

## PART F: VESSEL TRAILER COVERAGE

**PERILS INSURED AGAINST:** We will provide coverage for all accidental, direct physical loss or damage to any trailer listed on the Declarations Page, but only:
a. if used exclusively for transporting the vessel; and
b. while located in the continental United States including Alaska, Hawaii, Puerto Rico or Canada

**EXCLUSIONS:** We do not provide coverage under Part F: Vessel Trailer Coverage against loss or resulting damage from:
a. wear and tear, mechanical breakdown, gradual deterioration, weathering, insects, mold, animals, marine life, ice, freezing or extremes of temperature;
b. marring, scratching or denting;
c. osmosis, blistering, electrolysis or corrosion;
d. manufacturer's defects, defects in designs or latent defects;
e. weight of a load exceeding the rated capacity of a trailer.

**DEDUCTIBLE AMOUNT:** We will adjust each claim separately for a covered loss to your insured property. The amount of adjusted claim will be automatically reduced by the Deductible Amount shown on the Declarations Page. We will treat each covered loss as a separate claim. For deductible purposes, we will treat two or more covered losses resulting from the same accident or occurrence as one claim.

7

**LOSS SETTLEMENT:** In the event of loss or damage to the vessel trailer, we will pay the lowest of the following amounts:
a. the Part F: Vessel Trailer Coverage limit as shown on the Declarations Page;
b. the actual cash value at the time of loss;
c. the cost to repair subject to depreciation;
d. the cost of replacement.

## PART G: PERSONAL PROPERTY COVERAGE

**PROPERTY COVERED:** We will cover clothing, fishing equipment and personal effects that belong to you, your crew, your clients or members of your family while these items are on board your vessel or are being loaded or unloaded. We will not cover sports equipment, money, jewelry, traveler's checks or any other valuable papers or documents.

**CAUSES OF LOSS WHICH ARE COVERED:** We will cover direct physical loss or damage from any external cause, except as specifically excluded in this policy.

**FISHING EQUIPMENT STORED ASHORE:** We will cover fishing equipment temporarily stored ashore. However, the coverage provided herein does not insure the mysterious disappearance and/or theft of any covered fishing equipment, unless:
a. there is visible evidence of forcible entry into the storage facility;
b. there is visible evidence of forcible removal of covered fishing equipment from the storage facility.

**EXCLUSIONS:** We do not provide coverage under Part G: Personal Property Coverage against loss or resulting damage from:
a. wear and tear, mechanical breakdown, gradual deterioration, weathering, insects, mold, animals, marine life, ice, freezing or extremes of temperature;
b. marring, scratching or denting;
c. osmosis, blistering, electrolysis or corrosion;
d. manufacturer's defects, defects in designs or latent defects.

**MYSTERIOUS DISAPPEARANCE:** The coverage provided herein does not insure the mysterious disappearance and/or theft of any covered property unless:
a. there is visible evidence of forcible entry into the cabin of the insured vessel;
b. there is visible evidence of forcible removal of covered properties from the insured vessel;
c. there is a theft of the entire vessel.

**DEDUCTIBLE:** We will adjust each claim separately for a covered loss to your insured property. The amount of adjusted claim will be automatically reduced by the Deductible Amount shown on the Declarations Page. We will treat each covered loss as a separate claim. For deductible purposes, we will treat two or more covered losses resulting from the same accident or occurrence as one claim.

**LOSS SETTLEMENT:** In the event of loss or damage to your insured property, we will pay the lowest of the following amounts:
a. the Part G: Personal Property Coverage limit as shown on the Declarations Page;
b. the actual cash value at the time of loss;
c. the cost to repair subject to depreciation;
d. the cost of replacement.

## GENERAL CONDITIONS AND EXCLUSIONS

**POLICY PERIOD:** This policy applies only in the event of an accident or loss which occurs during the Policy Period as shown on the Declarations Page.

**EXTENSION OF COVERAGE:** If the Navigational Limits or Lay-Up Warranty shown on the Declarations Page are breached due to matters beyond your control, the policy will remain in effect, but only if you give us written notice of the breach within 10 days after the breach and pay any additional premiums due us for this extension of coverage. If the Navigation Limits or Lay-Up Warranty are breached voluntarily, there shall be no coverage under this policy without both prior notice to us and approval by us.

**NON-OWNED VESSEL:** We do not provide any coverage for non-owned vessels you may operate.

**RACING:** We will not pay for any loss that occurs while the insured vessel is being operated in any race or speed test. This does not apply to sailboats navigating in inland waters or in coastwise waters of the continental United States within 10 miles offshore.

**BROADENING COVERAGE:** If, during the Policy Period, we make any revision to this policy, which broadens the coverage without additional premium, the broadened coverage will apply as of the effective date of such revision.

**POLICY PREMIUM AND RENEWAL:** The premium shown on the Declarations Page is the initial premium for this policy. If we agree to renew or continue the policy, then at the time of each renewal or continuation of, on the policy anniversary date, the premium for the renewal or continuation will be computed by us according to our premium rules, forms and guidelines then in use.

**CHANGES IN POLICY:** This policy contains all of the agreements between you and us. Its terms may not be changed or waived except by an endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of the policy change.

**CONFORMITY TO STATE LAW:** When a provision of this policy is in conflict with the applicable law of the state in which this policy is issued, then the law of the state shall apply.

**CANCELLING THE POLICY:** You may cancel this policy by returning it to us or our authorized agent or by advising us or our authorized agent in writing, stating the future date you want it to be canceled. We may cancel this policy by delivering or mailing to you at your last address shown on our records, written notice stating when, not less than 15 days after mailing, the policy will be canceled. Delivery or mailing of this notice to you shall be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice shall become the end of the Policy Period.

**RETURN PREMIUMS:** If this policy is canceled, you may be entitled to a premium refund. If we cancel the policy, any return premium will be computed on a pro-rata basis. If you cancel the policy, any return premium will be computed on a 90% pro-rata basis. No premiums will be returned to you if we have paid you for a total or constructive total loss of the vessel insured under this policy. Any return premium will be paid to you as soon as possible after the cancellation.

**USE OF VESSEL:** We do not provide any coverage while your insured property is used for any type of commercial purposes other than carrying fare-paying passengers on sport fishing and other similar excursions. It is further warranted that, if applicable, the vessel maintain a current certificate of inspection from the United States Coast Guard. We will provide coverage when your vessel is used for private pleasure and while you are attempting to aid other vessels in distress, provided there is no consideration for your services.

**CAPTAIN WARRANTY:** Warranted that while the insured vessel(s) is used for commercial purposes such as described under Use of Vessel, a captain duly licensed in accordance with United States law and the law of the Port from which the vessel operates shall be aboard and in charge of the vessel at all times.

**PASSENGER WARRANTY:** Warranted that the number of passengers carried on board the insured vessel(s) shall be in compliance with all United States Coast Guard and/or government regulations.

**FIREARMS EXCLUSION:** We do not provide coverage against loss, damage or expense arising from the intentional or accidental discharge of a firearm on board the vessel(s) insured by this policy.

**NAVIGATION WARRANTY:** Navigation will be confined as stated in the Declarations Page, but in no event shall the vessel be navigated beyond the limits permitted by the United States Coast Guard.

**LAY-UP WARRANTY:** Means a series of consecutive months during the policy period when your vessel is laid up and out of commission. During this time your vessel must be laid up in a safe berth ashore or afloat, and not navigated or used for living aboard. All removable gear and equipment must be taken off the vessel and stored ashore.

**SEAWORTHINESS WARRANTY:** Warranted that, at the inception of coverage and throughout the policy term, the vessel shall be in seaworthy condition, the insured shall exercise due diligence to keep the vessel seaworthy, and in all respects fit, tight, and properly manned, equipped and supplied.

**LOSS-OF-USE EXCLUSION:** We do not cover loss resulting from cancellation of charters, noncollectibility of freight, bad debts, insolvency of agents or others, or detention of demurrage of the vessels insured by this policy.

**TRANSFER OF INTEREST:** All coverage provided by us will terminate upon the sale, assignment, transfer or pledge of the insured property or of this contract unless prior written consent has been obtained from us.

**CONCEALMENT, MISREPRESENTATION OR FRAUD:** All coverage provided by us will be voided from the beginning of the Policy Period if you intentionally conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss.

**DISHONEST, ILLEGAL OR INTENTIONAL ACTS:** We do not pay for loss or damage caused by the dishonest, illegal or intentional acts of any covered person, or any person to whom your insured property is entrusted, regardless of whether or not such person is convicted of such an act by a criminal court.

**NO BENEFIT TO OTHERS:** No person or organization, which has custody of your insured property and is to be paid for services, will benefit from this insurance.

**WAR, CONFISCATION AND RADIOACTIVE CONTAMINATION:** We do not provide any coverage for loss or damage due to:
a. war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military force or military personnel, destruction or seizure for military purpose and including any consequence of these;
b. the lawful or unlawful capture, seizure, confiscation, requisition or detainment of your vessel by a civil or military authority, or an attempt at any of these, due to, or on account of:
   1. any illicit or prohibited trade;
   2. entering or for the consequences of entering prohibited fishing waters;
   3. violation of any port regulation;
   4. claims for wages or provisions furnished to officers or crew while the vessel insured hereunder may be detained as a result of any such violations, seizure detention, confiscation, loss or disaster, or during any subsequent salvage and/or repair;
c. radioactive contamination.

## GENERAL PROVISIONS IN THE EVENT OF LOSS

**PROTECTION AGAINST LOSS:** If your vessel or other property covered by this policy is damaged, you must take all reasonable steps to protect it from further damage. We will reimburse you for reasonable expenses for protecting the property from further damage. Payments for protecting damaged property will be in addition to any other payments we make for losses covered by this policy. However, the most we will pay for protecting damaged property is the coverage limit which applies to that property.

**ABANDONMENT:** If we take any steps to protect damaged property, this does not mean we are accepting an abandonment of the property. And, if you take steps to protect damaged property, this does not mean you are waiving any rights you have to abandon the property.

**NOTICE OF LOSS:** You must report in writing to us, or our authorized agent, as soon as possible after the occurrence of any accident, loss, damage or expense that may be covered under this policy. This notice should state when, where and how the event occurred, and should include the names and addresses of any witnesses. You are also required to notify the police and file a police report as soon as you are aware that your property has been stolen or vandalized. If you do not provide the notice to us as required under this section as soon as possible, any claim for such loss under this policy will be voided.

**PROOF-OF-LOSS:** You must file with us, or our authorized agent, as soon as possible after our written request, a detailed proof-of-loss signed and sworn to by you setting forth to the best of your knowledge, the facts of the loss. We may also require you to submit to an examination under oath. See Part C: Medical Payments Coverage for special proof-of-loss requirements for medical payments claims.

**CLAIM OR SUIT AGAINST YOU:** If a claim is made or suit is brought against you for liability that may be covered under this policy, you must immediately notify us and send us every demand, notice, summons or other legal papers received by you or your representative. We will pay the ensuing cost of the suit. We will also have the option of naming attorneys to represent you. Payments for the cost of your legal defense will be in addition to payments we make under your coverage for liability claims against you.

**ASSISTANCE AND COOPERATION:** Any person making a claim must:
a. cooperate with us in the investigation, settlement or defense of any claim or suit under this policy;
b. assist us in the enforcement of any right of contribution or indemnity against any person or organization which may be liable to any covered person;
c. allow us to inspect and appraise all damaged property, not stolen or otherwise unrecoverable, before it is repaired or disposed of;
d. sign a written authorization permitting us to obtain medical files and other pertinent records;
e. submit, at our expense and as often as we reasonably require, to a physical examination by physicians we select and at the time and place we select;
f. not assume any obligation or admit any fault or liability that you or we may be liable for without first obtaining our written consent; and
g. not incur any expenses that we may be liable for without first obtaining our written consent; the only expenses you may incur without obtaining our written consent are those covered under Part C: Medical Payments Coverage of this policy, or as described in General Provisions In The Event Of Loss in the Protection Against Loss section.

**PAYMENT OF LOSS:** Unless a claim has been paid by others, we will pay for any loss covered under this policy within 30 days after both the detailed sworn proof of loss and proof of your interest in the insured property are given to us.

**OUR RIGHT TO RECOVER:**
a. if we make a payment under this policy and the person to or for whom payment was made has the right to recover from another for the covered loss, we will be subrogated to that right; that person will do whatever is necessary to enable us to exercise our rights and will do nothing after the loss to prejudice them;
b. if we make a payment under this policy and the person to or for whom payment is made, recovers damages from another, that person will hold the proceeds of the recovery for us and will reimburse us to the extent of our payment.

**SALVAGE:** If we have made payment under this policy for loss or damage, and if there is salvage or recovery as a result of that loss or damage, we have the right to recover that salvage or recovery to the extent of our payment.

**SUIT AGAINST US:** You may not bring a suit against us unless you have complied with all terms and conditions of this policy. In addition:

a. with respect to any claim or loss to insured property, any suit against us must commence within one year of the date of loss or damage;

b. with respect to any other claim for loss, no suit may be brought against us until the amount of the covered person's obligation to pay has been determined by final judgments after trial or by written agreement signed by you, us and the claimant; any such legal action against us must commence within one year of the date of judgment or written agreement;

c. no one shall have any right to join us as a party to any action against a covered person;

d. if any time limitations of this policy are prohibited or invalid under the law, then legal action against us must be commenced within the shortest limitation of time permitted by such law.

**OTHER INSURANCE:** If any covered person has any other insurance against a property damage loss covered under this policy, we will not pay for any greater proportion of the loss than our applicable amount of insurance stated on the Declarations Page bears to the total amount of insurance covering the loss. With respect to liability, any insurance provided by this contract shall be deemed excess over all other valid and collectible insurance.

## SIGNATURES

**The only signatures applicable to this policy are those representing the company named on the first page of the declarations.**

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

_George D. Mulligan_
GEORGE D. MULLIGAN, Secretary

Insurance Company of North America
Philadelphia, Pennsylvania

CIGNA Insurance Company of Ohio
Independence, Ohio

Atlantic Employers Insurance Company
Voorhees, New Jersey

CIGNA Property & Casualty Insurance Company
Bloomfield, Connecticut

Bankers Standard Insurance Company
Philadelphia, Pennsylvania

_Richard C. Franklin_
RICHARD C. FRANKLIN, President

CIGNA Insurance Company
Philadelphia, Pennsylvania

Pacific Employers Insurance Company
Philadelphia, Pennsylvania

CIGNA Insurance Company of Texas
Irving, Texas

CIGNA Insurance Company of the Midwest
Indianapolis, Indiana

_George D. Mulligan_
GEORGE D. MULLIGAN, Secretary

_Dennis Kane_
DENNIS KANE, President

Indemnity Insurance Company of North America
Philadelphia, Pennsylvania

_George D. Mulligan_
GEORGE D. MULLIGAN, Secretary

_E. M. Cole_
EDWARD M. COLE, President

CIGNA Insurance Company of Illinois
Chicago, Illinois

**CIGNA** Property
& Casualty
Specialty Insurance

*A Business of Caring.*

MA-9X50   1/98

# EXHIBIT  2



# CERTIFICATE OF INSURANCE

## CLAIMS MADE FORM

Page: 1

CERTIFICATE NUMBER:    104197

PADI NO.:    095066

EFFECTIVE DATE:    06/30/2000

NAME AND ADDRESS OF INSURED(S):

| | |
|---|---|
| KARTMAN, NOEL, A<br>PO BOX 420901<br>SUMMERLAND KEY, FL 33042-0901 US | **PADI**<br>The PADI Risk Purchasing Group Inc.<br>30151 Tomas Street<br>Rancho Santa Margarita, CA 92688 |

| COVERAGE | INSURER AND POLICY NO. | LIMITS OF LIABILITY | EXPIRATION DATE |
|---|---|---|---|
| UNDERWATER INSTRUCTORS LIABILITY INSURANCE | **Columbia Casualty Company**<br><br>PDI167047804-01 | BODILY INJURY & PROPERTY DAMAGE<br>$1,000,000<br>COMBINED SINGLE LIMIT AND<br>$2,000,000<br>ANNUAL AGGREGATE | 06/30/2001<br>12:01:00 AM<br><br>90 DAY·<br>DISCOVERY<br>PERIOD |

Status of Insured is Divemaster as of 06/30/2000

IT IS UNDERSTOOD AND AGREED THAT ADDITIONAL INSURED COVERAGE IS INCLUDED FOR ANY RETAIL DIVE STORE (INCLUDING ITS OWNERS OR PARTNERS), DIVE BOAT, EDUCATIONAL INSTITUTION, MARINA, GOVERNMENTAL ENTITY OR MUNICIPALITY, SWIMMING POOL FACILITY, LANDLORD, PROPERTY OWNER, DIVE RESORT, HOTEL OR MOTEL FROM WHICH AN INSTRUCTOR, ASSISTANT INSTRUCTOR OR DIVEMASTER OPERATES. HOWEVER, THIS ADDITIONAL INSURED PROTECTION SHALL IN ALL CASES BE LIMITED IN SCOPE TO APPLY ONLY TO THE REGULAR OPERATIONS OF THE NAMED INSURED IN CONNECTION WITH HIS OR HER TEACHING AND/OR SUPERVISING OF SCUBA OR SNORKELING ACTIVITIES.

PREMIUM FULLY EARNED. THIS MEANS THERE IS NO REFUND IF YOU CANCEL YOUR INSURANCE.

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

NOTICE OF CANCELLATION - In the event of cancellation or change in the above certified coverages, the company will give forty five (45) days written notice of cancellation or change to: CERTIFICATE HOLDER and/or ADDITIONAL NAMED INSURED (Forty five (45) day notice of cancellation does not apply to non-payment of premium.)

This is to certify coverage under the above policies.

This insurance is issued pursuant to the California Insurance Code, Sections 1760 through 1780, and is·placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner.

*Steve Vicencia*

Vicencia & Buckley Insurance Services, Inc.
20 Centerpointe Drive, #100
La Palma, CA 90623-1078

(714) 739-3177    FAX (714) 739-3188
(800) 223-9998

MK's WORKING COPY

**PADI PROFESSIONAL MEMBERS**

**PROFESSIONAL LIABILITY POLICY**

*Noel Kartman*
*Divemaster policy*
*Same policy for last*
*4-5 years.*

**VACANCIA & BUCKLEY**
Insurance Services, Inc.


PADI

SCUBA INSTRUCTION.

PROFESSIONAL LIABILITY COVERAGE FORM

THIS POLICY PROVIDES
CLAIMS MADE COVERAGE

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II–WHO IS AN INSURED.

Other words and phrases that appear in the quotation marks have special meaning. Refer to SECTION V–DEFINITIONS.

SECTION I - COVERAGE

1.  Insuring Agreement.

A.  We will pay those sums that the insured becomes legally obligated to pay as damages because of any occurrence that is a result of any negligent act, error or omission in the rendering or failure to render "professional services" of the type described in the description of professional hazards section of the Professional Liability Coverage Part Declarations, whether committed by the insured or by any person for whose negligent acts, errors or omissions the insured is legally responsible. No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverage P. The "occurrence" must take place within the "coverage territory" during the "coverage period". We will have the right and duty to defend any "suit" seeking those damages, but we will have no duty to defend the insured against any "suit" seeking "damages" for a negligent act, error or omission to which this insurance does not apply. However,

(1)  The amount we will pay for damages is limited as described in Limits of Insurance (Section III);

(2)  We may investigate and settle any claim or "suit" at our discretion and we shall have the exclusive rights to contest or settle any claim or suit; and

(3)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgements or settlements.

B.  This insurance applies to "damages" only if:

(1)  The occurrence resulting from any negligent act, error or omission did not occur before the Retroactive Date, if

1

jury, shown in the declarations or after the end of the policy period; and

(2) A claim for damages because of the rendering or failure to render "professional services" is first made against any insured, in accordance with paragraph c below, during the policy period or any Extended Reporting Period we provide under Section VI (B).

C. A claim by a person or organization seeking "damages" will be deemed to have been made at the earlier of the following times:

(1) When notice of such claim or "occurrence" is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with paragraph A above.

A claim made during the "coverage period" and arising out of an "occurrence" that results from a single act, error or omission or that results from a series of related acts, errors or omissions, shall be considered first made during the policy claim arising out of an "occurrence" that results from such acts, errors or omissions or related acts, errors or omissions was first made, and all such claims shall be subject to the limit of liability stated in item 3 of the declarations of the policy which applies to such earliest claim.

2. Exclusions:

This insurance does not apply to:

A. "Bodily injury", "property damage", "advertising injury" or "personal injury", except arising out of a negligent act, error or omission in the rendering or failure to render "professional services" by an insured.

B. Any dishonest, fraudulent, criminal or malicious act or omission of the insured.

C. The conduct of any business enterprise (including the ownership, maintenance or use of any property in connection therewith) owned by the insured or in which any insured is a partner, or which is directly or indirectly controlled, operated or managed by any insured either individually or in a fiduciary capacity; but this exclusion does not apply to the practice of "professional services" as described in the description of professional hazards section of the Professional Liability Coverage Part Declarations.

D. Actions for libel, slander, invasion of privacy, assault or battery or conversions;

E. The assumption of liability in a contract or agreement;

F. Any obligation of the insured under a workers

compensation, disability benefits or ...mployment compensation law or any similar law.

G. Bodily Injury, Personal Injury and/or Advertising Injury to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damage because of the injury.

H. The performance of a criminal act or caused by a person while under the influence of intoxicants or narcotics.

I. Liability arising out of the insurer's services and/or capacity as:

(1) an officer, director, partner, trustee or employee of a business enterprise not named in the declarations;

(2) an officer, director, partner, trustee or employee of a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust;

(3) a fiduciary under the Employment Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other employee benefit plan.

J. To "bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile, aircraft or watercraft. However, this exclusion shall not apply to the ingress and/or egress from any watercraft while any diver is under the insured certificate holder's supervision and/or instruction.

K. To "property damage" to:

(1) Property owned or occupied by or rented to the insured;

(2) Property used by the insured; or

(3) Property in the care, custody or control of the insured or as to which the insured if for any purpose exercising physical control. This exclusion does not apply to swimming pools rented by, used by, or occupied by the named insured.

L. To liability arising from the acts other than those that have been approved and sanctioned for aquatic organizational instruction, orientation, or supervision.

M. To "bodily injury" or "property damage" resulting from the

3

2

use, supplying, rental or sale of any equipment including but not limited to regulators, gauges, compressed air, buoyancy compensation devices, air cylinders, dive tables, or decompression computers.

N. Any civil, criminal or administrative fines or penalties levied against an insured or anyone working on behalf of the insured.

O. Any claim indemnification for punitive or exemplary damages.

P. Any claims arising out of knowingly non-complying with Federal, State and/or local statutes.

Q. Any claim based upon or arising out of discrimination by the insured on the basis of age, color, race, sex, creed, national origin, marital status, sexual orientation, handicap status or disability. However, this exclusion does not apply if instruction is denied for valid safety reasons. Valid safety reasons include, but are not limited to, concern over medical history of student, disability of student or determination that student lacks physical aptitude to dive.

R. Any claim arising out of the insured's inability to complete jobs as a result of its bankruptcy or insolvency.

S. "Personal Injury" to an employee of the insured arising out of and in the course of employment by the insured.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

T. "Bodily Injury" and "Personal Injury" arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

(4) Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

U. Any claim arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape or pollutants:

(1) At or from any premises, site or location which is or was [illegible]

(2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(4) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

   a. if the pollutants are brought on or to the premises, site or location in connection with such operations by such insureds, contractors or subcontractors; or

   b. if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and wastes. Waste includes materials to be recycled, reconditioned or reclaimed.

V. Asbestos Exclusion

(1) "Damages" arising out of, resulting from, caused or contributed by asbestos or exposure to asbestos; or

(2) The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also includes:

   a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

   b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

W. Damages arising out of an act, error or omission:

(1) Disclosed in your application of insurance or any accompanying documents provided to us; or

(2) You had knowledge of or information on, prior to the first inception date or continuous claims-made coverage with us, and which may result in a claim.

3. Supplementary Payments - Coverage P

We will pay with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

4. All costs taxed against the insured in the "suit".

5. Pre-judgement interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

THESE PAYMENTS WILL NOT REDUCE THE LIMITS OF INSURANCE

## SECTION II - WHO IS AN INSURED

Each of the following is an insured under this insurance to the extent set forth below:

A. The named insured shall be the organization stated in the declarations of the policy; and

B. Anyone to whom a certificate of insurance has been issued under this policy;

C. Any additional insured named by endorsement or certificate to this policy, is hereby understood and agreed that this policy is extended to include the interest of additional insureds, solely, however, with respect to their interest in activities conducted by the named insured hereunder, but shall not operate to increase the limit of liability hereunder.

D. The following are not insured unless said person or entity is a certificate holder or an additional insured under the policy.

(1) The employer of an insured.

(2) The employee of an insured.

(3) Any corporation, partnership or joint venture of which the insured is an officer, partner, joint venturer or employee

## SECTION III - LIMITS OF INSURANCE

A. Insureds;

B. Claims made or "suit" brought; or

C. Persons or organizations making claims or bringing "suit".

2. The Professional Liability Aggregate Limit is the most we will pay for the sum of all damages to which this insurance applies. However, this aggregate limit applies separately to each certificate holder and the named organization.

3. Subject to the Professional Liability Aggregate Limit, the Professional Liability Each Claim Limit is the most we will pay for the sum of all damages arising out of any negligent act, error or omission. However, the Professional Liability each claim limit applies separately to each certificate holder and the named organization.

## SECTION IV - PROFESSIONAL LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the Event of a Negligent Act, Error or Omission or Claim or "Suit"

A. You must notify us promptly of a negligent act, error or omission which may result in a claim. Notice should include:

(1) How, when and where the negligent act, error or omission took place; and

(2) The names and addresses of any injured persons or witnesses.

B. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

C. You and any other involved insured Must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit".

(2) Authorize us to obtain records and other information;

(3) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply.

D. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, settle any claim, admit any liability without our consent.

Legal Action Against Us

... person or organization has a right under this Coverage Part:

A. To join us as a party otherwise bring us into a "suit" asking for damages from an insured; or

B. [...] us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgement against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

A. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we shall share with all that other insurance by the method described in c. below.

B. Excess Insurance

This insurance is excess [...]

a. No Retroactive Date is shown in the Declarations of this insurance; or

b. The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

(2) That is Fire, Extended Coverage, Builders Risk, Installation Risk or similar coverage for "your work"; or

(3) That is Fire insurance for premises rented to you; or

(4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Section I Exclusion J.

When this insurance is excess, we will have no duty under this coverage part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The [...] amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in the Excess Insurance provision and was not bought specifically to apply excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

C. Method of sharing

If all the other insurance permits contribution by equal share, we will follow this method also. Under this approach, each insurer, contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Premium Audit

A. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

B. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice on the first Named Insured. It is expressly agreed that the premium shown is a minimum premium and fully earned upon the issuance of this coverage. This premium is not subject to return premium or adjustment unless the policy is canceled by the Company of it is considered null and void as a result of any breach of a policy warranty.

C. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations

By accepting this policy, you agree:

A. The statements in the Declarations are accurate and complete;

B. Those statements are based upon representation you made to us; and

C. We have issued this policy in reliance upon your representations.

B. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgement against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

A. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we shall share with all that other insurance by the method described in c. below.

B. Excess insurance:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

(1) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" on other than a "claims-made" basis, if:

a. No Retroactive Date is shown in the Declarations of this insurance; or

b. The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

(2) That is Fire, Extended Coverage, Builders Risk, Installation Risk or similar coverage for "your work", or

(3) That is Fire insurance for premises rented to you; or

(4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Section I Exclusion J.

When this insurance is excess, we will have no duty under this coverage part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in the Excess Insurance provision and was not bought specifically to apply excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

C. Method of sharing

If all the other insurance permits contribution by equal share, we will follow this method also. Under this approach, each insurer, contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

A. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

B. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice on the first Named Insured. It is expressly agreed that the premium shown is a minimum premium and fully earned upon the issuance of this coverage. This premium is not subject to return premium adjustment unless the policy is canceled by the Company of a policy warranty.

C. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

A. The statements in the Declarations are accurate and complete;

B. Those statements are based upon representation you made to us; and

C. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

A. As if each Named Insured were the only Named Insured; and

B. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help enforce them.

**SECTION V - DEFINITIONS**

1. "Advertising Injury" means:

A. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

B. Oral or written publication of material that violates a person's right of privacy;

C. Misappropriation of advertising ideas or style of doing business; or

D. Infringement of copyright, title or slogan.

2. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death or mental anguish resulting from any of these at any time.

3. "Coverage Period" means: the time from the inception of the first policy of this type we wrote for you to the expiration of the last such policy we wrote for you including any Retroactive Dates and/or Extended Reporting Periods in such policy.

4. "Coverage Territory" means: Anywhere in the World

5. "Damages" means: any compensatory amount which an insured is legally obligated to pay for any claim to which this insurance applies, but does not include injunctive or equitable relief or the return of fees or charges for services rendered.

6. "Named Insured" means in addition to Section II (Who is an Insured) Named Insured means a person in whose name the certificate of insurance is issued. The Named Insured shall not mean any Additional Insured listed on the certificate.

7. "Occurrence" means an accident (an event unintended by the insured), which occurs while the claimant or decedent is in the water, entering, exiting or preparing to enter the water in connection with Scuba (self contained breathing apparatus) or snorkeling activities. It also includes an accident occurring in a

pool or a natural body of water and/or classroom.

8. "Personal Injury" means injury, other than "Bodily Injury", arising out of one or more of the following offenses:

A. False arrest, detention or imprisonment;

B. Malicious prosecution;

C. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

D. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

E. Oral or written publication of material that violates a person's right of privacy.

9. "Professional Services" mean:

Those services rendered by certified instructors, assistant instructors, dive masters, snorkel or swim instructors.

10. "Property Damage" means:

A. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

B. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

11. "Pollutants" mean any solid, gaseous, liquid or thermal irritant or contaminant, including smoke, vapor or soot, fumes, acids, alkalis or chemicals and waste.

12. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

**SECTION VI - BASIS OF CLAIM - CLAIMS MADE CLAUSE**

A) This policy applies to claims first made against the insured &/or certificate holder insured during the policy period, but in no event will coverage apply with respect to occurrences taking place prior to the *30th June 1992* or the effective date of the first certificate issued to the certificate holder insured hereunder whichever is later. Notwithstanding the foregoing, it is a condition precedent that the retroactive coverage described above applies only if coverage has been continuous; in the event of non-continuity, coverage shall only apply with respect to occurrences taking place on or after the date from which coverage has been continuous.

11

10

It is further agreed that this policy does not apply to "Bodily Injury", "Personal Injury", or "Property Damage" arising out of an "occurrence".

  i)  disclosed in your application or insurance or any accompanying documents provided to us, or

  ii)  you had knowledge of, or information on, prior to the first inception date of coverage with us, and which may result in a claim.

B)  Following the end of the policy period hereunder (30th June) there shall be a further ninety (90) day period to report claims and/or "occurrences" made against the certificate holder insured for occurrences taking place during the period of the certificate issued under this policy and such claims shall be treated as if made during the policy period: this extended reporting period shall also apply to terminated certificates, unless terminated due to non-payment of premium.

## SECTION VII - NOTICE OF CANCELLATION

This policy, or any certificate, may be canceled by the Company by mailing to the named insured at the address shown in this policy or certificate, written notice stating when not less than forty-five (45) days thereafter such cancellation shall be effective. Except in the case of cancellation for non-payment of premium, for which written notice stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice of aforesaid shall be sufficient proof of notice.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the Company shall be equivalent to mailing.

## SECTION VIII - WARRANTIES, CONDITIONS AND LIMITATIONS OF COVERAGE

Notwithstanding anything to the contrary contained herein, in consideration of the coverage provided, in addition to the premium charged, it is agreed that the insured warrants the acts and activities, insured herein, shall conform with the following agreements:

1.  During open water instruction and/or tests, no instructor shall knowingly permit any uncertified student to leave the immediate area without supervision and attendance of an instructor or a certified assistant.

2.  During open water instruction and/or tests, no instructor, certified assistant or divemaster shall leave or permit any uncertified student to be unattended.

3.  Training dives shall be planned within accepted recreational limits. For the purpose of this warranty, recreational training dives are defined as scuba dives:

  •  Planned to 40 metres/130 feet or shallower

  •  Planned without mandatory stage decompression (safety stops are acceptable)

  •  Made using compressed air. However, coverage for training activities using enriched air is provided only when students are previously certified divers.

4.  Supervised dives shall be planned within accepted recreational limits. For the purpose of this warranty, recreational supervised dives are defined as:

  •  Planned to 40 metres/130 feet or shallower

  •  Planned without mandatory stage decompression (safety stops are acceptable)

  •  Made using compressed air or enriched air only.

5.  The instructor shall require each student to complete a medical history form at the beginning of instruction. If the medical history form indicates any condition contrary to safe participation in diving activities, the student shall be required to obtain medical approval by a licensed physician (based on a medical examination) prior to any water instruction. Any medical history form which is completed by a minor is to be signed by the minor's parent or legal guardian.

6.  In no event will medical approval be accepted where the physician signing the certificate is the student.

7.  The instructor shall require each student to complete a release of liability/assumption of risk form at the beginning of instruction. The release of liability/assumption of risk form will include an acknowledgement that the student knows the dive site may be remote and that a recompression chamber may not be readily available and that they still wish to continue their instruction and assume the risk of the absence of a recompression chamber. Any release of liability/assumption of risk form which is completed by a minor is to be signed by the minor's parent or legal guardian.

8.  No scuba instruction shall be given to anyone under the age of 10, except that "Discover Scuba" courses which are taught in confined water only (e.g. swimming pools) may be offered to anyone age 8 and older.

No instructor shall provide instruction to a minor (i.e., student between the ages of 8 and 18 years) without first having secured a release of liability and medical history form signed by parent(s) or legal guardian(s).

9.  Records used for the purpose of recording the student's progress shall be maintained by the instructor and/or Dive Center/Resort Operator.

10.  Records of knowledge tests for the purpose of evaluating the student's understanding of the instructional material shall be maintained by the instructor and/or Dive Center/Resort Operator.

11.  All records relating to individual students shall be retained for a minimum of five (5) years by the instructor and/or Dive Center/Resort Operator.

It is agreed that upon failure to conform to the foregoing warranties, this policy shall be considered null and void at the breach of warranty, and the underwriter agrees to remit the unearned premium upon demand.

## SCUBA INSTRUCTORS
## PROFESSIONAL LIABILITY COVERAGE PART
### (CLAIMS-MADE)

### ADDITIONAL INSURED - BLANKET FORM

1) ADDITIONAL INSURED COVERAGE IS INCLUDED FOR ANY RETAIL DIVE STORE (INCLUDING ITS OWNERS OR PARTNERS), DIVE BOAT, EDUCATIONAL INSTITUTION, MARINA, GOVERNMENTAL ENTITY OR MUNICIPALITY, SWIMMING POOL FACILITY, LANDLORD, PROPERTY OWNER, DIVE RESORT, HOTEL OR MOTEL FROM WHICH AN INSTRUCTOR, ASSISTANT INSTRUCTOR OR DIVE MASTER OPERATES; HOWEVER, THIS ADDITIONAL INSURED PROTECTION SHALL IN ALL CASES BE LIMITED IN SCOPE TO APPLY ONLY TO THE REGULAR OPERATIONS OF THE NAMED INSURED IN CONNECTION WITH HIS OR HER TEACHING AND/OR SUPERVISING OF SCUBA OR SNORKELING ACTIVITIES, SANCTIONED AND APPROVED BY PADI.

2) ADDITIONAL INSUREDS OTHER THAN THOSE ENTITIES ABOVE ARE ADDED AS AN ADDITIONAL INSURED IF NAMED ON A CERTIFICATE OF INSURANCE ISSUED TO AN INSURED. HOWEVER, COVERAGE IS LIMITED TO CLAIM ARISING OUT OF THE REGULAR OPERATION OF THE NAMED INSURED IN CONNECTION WITH HIS OR HER TEACHING OR SUPERVISING OF SCUBA OR SNORKELING ACTIVITIES SANCTIONED AND APPROVED BY PADI.

3) HOWEVER, THE INSURANCE PROVIDED TO THE ADDITIONAL INSURED DOES NOT APPLY TO:

A. "BODILY INJURY" OR "PROPERTY DAMAGE" ARISING OUT OF A SCUBA DIVING TRAINING AGENCY'S RENDERING OR FAILURE TO RENDER:

1. TRAINING OR EDUCATIONAL STANDARDS, OR EDUCATIONAL MATERIALS TO ANY INSURED.

2. SUPERVISION OF SCUBA INSTRUCTORS, DIVEMASTERS, OR ASSISTANT INSTRUCTORS.

14

## COLUMBIA CASUALTY COMPANY
### SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the General Counsel, Columbia Casualty, CNA Plaza, Chicago, IL, and that in any suit instituted against such person upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of the Insurer in any such suit and, upon the request of the insured, to give a written undertaking to the Insured that he will enter a general appearance upon the Insurer's behalf in the event such suit shall be instituted.

Further, pursuant to any statue of any state, territory or district of the United States which makes provision therefor, the Insurer hereby designated the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or true copy thereof.

15

# EXHIBIT  3

DOI FILE #: _____

## CIVIL REMEDY NOTICE OF INSURER VIOLATION
### INSTRUCTIONS FOR COMPLETING THIS FORM ON REVERSE SIDE

Date Submitted: __11/19/02__

INS. CO. FEIN #: __06-1059331__

1. Company: __CIGNA Insurance Company__ (Office of the Corporate Secretary)

   Street Address: __1650 Market Street__

   City/State/Zip: __Philadelphia, PA 19192__

   Individual(s) Involved: __Kevin Upmal__

   This notice is given for the purpose of perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

2. Complainant:   ☒ Insured   ☐ Third Party   ☐ Other

   Insured Name: __Paradise Divers, Inc.__              Policy No.: __SPC 6139905__

   Complainant Name: __Paradise Divers, Inc.__          Claim No.: __130S831708-9/434__

   Attorney (if any): __Michelle M. Niemeyer, Esq., Ver Ploeg__ & Lumpkin, P.A.

   Street Address: __100 S.E. 2d Street, Suite 2150__

   City/State/Zip/Cnty: __Miami, Florida 33131-2154__

3. TYPE OF INSURANCE:

   ☐ Accident & Health            ☐ Life & Annuity            ☐ Residential Property & Casualty

   ☐ Medicare Supplement          ☐ Auto                     ☐ Commercial Property & Casualty

   ☒ Miscellaneous __Recreational Marine Inspected Vessel Charter Policy__

4. REASON FOR NOTICE:

   ☐ Cancellation/Non-renew       ☒ Claim Denial             ☒ Unsatisfactory Settlement Offer

   ☒ Claim Delay                  ☒ Unfair Trade Practice    ☐ Other _____

5. PURSUANT TO SECTION 624.155(2)(b)1,F.S. please provide the statutory provision, including the specific language of the statute, which the insurer allegedly violated.

   List Statue number(s): __624.155(1)(a)(1); 624.155(1)(b)(1); 626.9541__

   Statute Language: __see attached statutes__

   _____

6. Briefly reference the specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

   __Captain and Crew Limitation Endorsement (purchased for additional premium):__
   __"we will pay sums ... for liability to a captain or crew member provided for under__
   __The Jones Act or general maritime law." Carrier also violated the "claim or suit against__
   __you" and "payment of loss" provisions of the policy.__

7. Briefly describe the facts and circumstances giving rise to the violation.

   __Mate injured in 2000. CIGNA counsel investigated claim. Counsel (CIGNA's agent) advised insured not to pay mate's__

   __medical bills, and withdrew w/o advising insured of actions that could be taken to limit liability. CIGNA denied coverage, claiming policy excluded swimmers__

   __& divers in the water, in spite of additional premium charged for endorsement providing coverage without such exclusion. CIGNA could have settled claim__

   __for approx. $50K in 2000, but denied coverage and has not attempted to settle. CIGNA's denial of coverage and the advice of its agent counsel__

   DI4-363  __have subjected the insured to suit demanding damages in excess of $2 million. CIGNA has promised defense under reservation of rights but__
   (rev. 11/99)  __not yet committed to mutually agreeable counsel.__

WEST'S FLORIDA STATUTES ANNOTATED
TITLE XXXVII. INSURANCE

CH. 624. INSURANCE CODE: ADMINISTRATION AND GENERAL PROVISIONS

PART I. SCOPE OF CODE

624.155. Civil remedy

(1) Any person may bring a civil action against an insurer when such person is damaged:

(a) By a violation of any of the following provisions by the insurer:

1. Section 626.9541(1)(i), (o), or (x);

2. Section 626.9551;

3. Section 626.9705;

4. Section 626.9706;

5. Section 626.9707; or

6. Section 627.7283.

(b) By the commission of any of the following acts by the insurer:

1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;

2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or

3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

Notwithstanding the provisions of the above to the contrary, a person pursuing a remedy under this section need not prove that such act was committed or performed with such frequency as to indicate a general business practice.

(2)(a) As a condition precedent to bringing an action under this section, the department and the insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed.

(b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:

1. The statutory provision, including the specific language of the statute, which the insurer allegedly violated.

2. The facts and circumstances giving rise to the violation.

3. The name of any individual involved in the violation.

4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

(c) Within 20 days of receipt of the notice, the department may return any notice that does not provide the specific information required by this section, and the department shall indicate the specific deficiencies contained in the notice. A determination by the department to return a notice for lack of specificity shall be exempt from the requirements of chapter 120.

(d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

(e) The insurer that is the recipient of a notice filed pursuant to this section shall report to the department on the disposition of the alleged violation.

(f) The applicable statute of limitations for an action under this section shall be tolled for a period of 65 days by the mailing of the notice required by this subsection or the mailing of a subsequent notice required by this subsection.

(3) Upon adverse adjudication at trial or upon appeal, the insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff.

(4) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:

(a) Willful, wanton, and malicious;

(b) In reckless disregard for the rights of any insured; or

(c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

Any person who pursues a claim under this subsection shall post in advance the costs of discovery. Such costs shall be awarded to the insurer if no punitive damages are awarded to the plaintiff.

(5) This section shall not be construed to authorize a class action suit against an insurer or a civil action against the department, its employees, or the Insurance Commissioner, or to create a cause of action when a health insurer refuses to pay a claim for reimbursement on the ground that the charge for a service was unreasonably high or that the service provided was not medically necessary.

(6) In the absence of expressed language to the contrary, this section shall not be construed to authorize a civil action or create a cause of action against an insurer or its employees who, in good faith, release information about an insured or an insurance policy to a law enforcement agency in furtherance of an investigation of a criminal or fraudulent act relating to a motor vehicle theft or a motor vehicle insurance claim.

(7) The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state. Any person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies. This section shall not be construed to create a common-law cause of action. The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the insurer and may include an award or judgment in an amount that exceeds the policy limits.

21720_1.SAM

FL ST § 626.9541
West's F.S.A. § 626.9541

▷

**WEST'S FLORIDA STATUTES ANNOTATED**
**TITLE XXXVII. INSURANCE**
**CHAPTER 626. INSURANCE FIELD REPRESENTATIVES AND OPERATIONS**
**PART IX. UNFAIR INSURANCE TRADE PRACTICES**

Copr. © West Group 2002.  All rights reserved.

Current through End of 2002 Regular Session and 2002 Special 'E' Session

626.9541. Unfair methods of competition and unfair or deceptive acts or practices defined

   **(1) Unfair methods of competition and unfair or deceptive acts.--**The following are defined as unfair methods of competition and unfair or deceptive acts or practices:

   (a) *Misrepresentations and false advertising of insurance policies.*--Knowingly making, issuing, circulating, or causing to be made, issued, or circulated, any estimate, illustration, circular, statement, sales presentation, omission, or comparison which:

   1. Misrepresents the benefits, advantages, conditions, or terms of any insurance policy.

   2. Misrepresents the dividends or share of the surplus to be received on any insurance policy.

   3. Makes any false or misleading statements as to the dividends or share of surplus previously paid on any insurance policy.

   4. Is misleading, or is a misrepresentation, as to the financial condition of any person or as to the legal reserve system upon which any life insurer operates.

   5. Uses any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof.

   6. Is a misrepresentation for the purpose of inducing, or tending to induce, the lapse, forfeiture, exchange, conversion, or surrender of any insurance policy.

   7. Is a misrepresentation for the purpose of effecting a pledge or assignment of, or effecting a loan against, any insurance policy.

   8. Misrepresents any insurance policy as being shares of stock or misrepresents ownership interest in the company.

   9. Uses any advertisement that would mislead or otherwise cause a reasonable person to believe mistakenly that the state or the Federal Government is responsible for the insurance sales activities of any person or stands behind any person's credit or that any person, the state, or the Federal Government guarantees any returns on insurance products or is a source of payment of any insurance obligation of or sold by any person.

   (b) *False information and advertising generally.*--Knowingly making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public:

   1. In a newspaper, magazine, or other publication,

   2. In the form of a notice, circular, pamphlet, letter, or poster,

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541
West's F.S.A. § 626.9541

3. Over any radio or television station, or

4. In any other way,

an advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance, which is untrue, deceptive, or misleading.

(c) *Defamation.*--Knowingly making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting, or encouraging the making, publishing, disseminating, or circulating of, any oral or written statement, or any pamphlet, circular, article, or literature, which is false or maliciously critical of, or derogatory to, any person and which is calculated to injure such person.

(d) *Boycott, coercion, and intimidation.*--Entering into any agreement to commit, or by any concerted action committing, any act of boycott, coercion, or intimidation resulting in, or tending to result in, unreasonable restraint of, or monopoly in, the business of insurance.

(e) *False statements and entries.*--

1. Knowingly:

a. Filing with any supervisory or other public official,

b. Making, publishing, disseminating, circulating,

c. Delivering to any person,

d. Placing before the public,

e. Causing, directly or indirectly, to be made, published, disseminated, circulated, delivered to any person, or placed before the public,

any false material statement.

2. Knowingly making any false entry of a material fact in any book, report, or statement of any person, or knowingly omitting to make a true entry of any material fact pertaining to the business of such person in any book, report, or statement of such person.

(f) *Stock operations and advisory board contracts.*--Issuing or delivering, promising to issue or deliver, or permitting agents, officers, or employees to issue or deliver, agency company stock or other capital stock, benefit certificates or shares in any common-law corporation, or securities or any special or advisory board contracts or other contracts of any kind promising returns or profits as an inducement to insurance.

<Text of subsec. (1)(g) effective until January 1, 2003>

(g) *Unfair discrimination.*--

1. Knowingly making or permitting any unfair discrimination between individuals of the same actuarially supportable class and equal expectation of life, in the rates charged for any life insurance or annuity contract, in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract.

2. Knowingly making or permitting any unfair discrimination between individuals of the same actuarially supportable class and essentially the same hazard, in the amount of premium, policy fees, or rates charged for any

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541
West's F.S.A. § 626.9541

policy or contract of accident, disability, or health insurance, in the benefits payable thereunder, in any of the terms or conditions of such contract, or in any other manner whatever.

3. For a health insurer, life insurer, disability insurer, property and casualty insurer, automobile insurer, or managed care provider to underwrite a policy, or refuse to issue, reissue, or renew a policy, refuse to pay a claim, cancel or otherwise terminate a policy, or increase rates based upon the fact that an insured or applicant who is also the proposed insured has made a claim or sought or should have sought medical or psychological treatment in the past for abuse, protection from abuse, or shelter from abuse, or that a claim was caused in the past by, or might occur as a result of, any future assault, battery, or sexual assault by a family or household member upon another family or household member as defined in s. 741.28(2). A health insurer, life insurer, disability insurer, or managed care provider may refuse to underwrite, issue, or renew a policy based on the applicant's medical condition, but shall not consider whether such condition was caused by an act of abuse. For purposes of this section, the term "abuse" means the occurrence of one or more of the following acts:

a. Attempting or committing assault, battery, sexual assault, or sexual battery;

b. Placing another in fear of imminent serious bodily injury by physical menace;

c. False imprisonment;

d. Physically or sexually abusing a minor child; or

e. An act of domestic violence as defined in s. 741.28.

This subparagraph does not prohibit a property and casualty insurer or an automobile insurer from excluding coverage for intentional acts by the insured if such exclusion does not constitute an act of unfair discrimination as defined in this paragraph.

<Text of subsec. (1)(g) effective January 1, 2003>

(g) *Unfair discrimination*.--

1. Knowingly making or permitting any unfair discrimination between individuals of the same actuarially supportable class and equal expectation of life, in the rates charged for any life insurance or annuity contract, in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract.

2. Knowingly making or permitting any unfair discrimination between individuals of the same actuarially supportable class and essentially the same hazard, in the amount of premium, policy fees, or rates charged for any policy or contract of accident, disability, or health insurance, in the benefits payable thereunder, in any of the terms or conditions of such contract, or in any other manner whatever.

3. For a health insurer, life insurer, disability insurer, property and casualty insurer, automobile insurer, or managed care provider to underwrite a policy, or refuse to issue, reissue, or renew a policy, refuse to pay a claim, cancel or otherwise terminate a policy, or increase rates based upon the fact that an insured or applicant who is also the proposed insured has made a claim or sought or should have sought medical or psychological treatment in the past for abuse, protection from abuse, or shelter from abuse, or that a claim was caused in the past by, or might occur as a result of, any future assault, battery, or sexual assault by a family or household member upon another family or household member as defined in s. 741.28. A health insurer, life insurer, disability insurer, or managed care provider may refuse to underwrite, issue, or renew a policy based on the applicant's medical condition, but shall not consider whether such condition was caused by an act of abuse. For purposes of this section, the term "abuse" means the occurrence of one or more of the following acts:

a. Attempting or committing assault, battery, sexual assault, or sexual battery;

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541
West's F.S.A. § 626.9541

b. Placing another in fear of imminent serious bodily injury by physical menace;

c. False imprisonment;

d. Physically or sexually abusing a minor child; or

e. An act of domestic violence as defined in s. 741.28.

This subparagraph does not prohibit a property and casualty insurer or an automobile insurer from excluding coverage for intentional acts by the insured if such exclusion does not constitute an act of unfair discrimination as defined in this paragraph.

(h) *Unlawful rebates.--*

1. Except as otherwise expressly provided by law, or in an applicable filing with the department, knowingly:

a. Permitting, or offering to make, or making, any contract or agreement as to such contract other than as plainly expressed in the insurance contract issued thereon;

b. Paying, allowing, or giving, or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance contract, any unlawful rebate of premiums payable on the contract, any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract;

c. Giving, selling, or purchasing, or offering to give, sell, or purchase, as inducement to such insurance contract or in connection therewith, any stocks, bonds, or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits accrued thereon, or anything of value whatsoever not specified in the insurance contract.

2. Nothing in paragraph (g) or subparagraph 1. of this paragraph shall be construed as including within the definition of discrimination or unlawful rebates:

a. In the case of any contract of life insurance or life annuity, paying bonuses to all policyholders or otherwise abating their premiums in whole or in part out of surplus accumulated from nonparticipating insurance; provided that any such bonuses or abatement of premiums is fair and equitable to all policyholders and for the best interests of the company and its policyholders.

b. In the case of life insurance policies issued on the industrial debit plan, making allowance to policyholders who have continuously for a specified period made premium payments directly toan office of the insurer in an amount which fairly represents the saving in collection expenses.

c. Readjustment of the rate of premium for a group insurance policy based on the loss or expense thereunder, at the end of the first or any subsequent policy year of insurance thereunder, which may be made retroactive only for such policy year.

d. Issuance of life insurance policies or annuity contracts at rates less than the usual rates of premiums for such policies or contracts, as group insurance or employee insurance as defined in this code.

e. Issuing life or disability insurance policies on a salary savings, bank draft, preauthorized check, payroll deduction, or other similar plan at a reduced rate reasonably related to the savings made by the use of such plan.

3. a. No title insurer, or any member, employee, attorney, agent, agency, or solicitor [FN1] thereof, shall pay, allow, or give, or offer to pay, allow, or give, directly or indirectly, as inducement to title insurance, or after such insurance has been effected, any rebate or abatement of the agent's, agency's, or title insurer's share of the premium or any charge for related title services below the cost for providing such services, or provide any special favor or

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541                                                      Page 5
West's F.S.A. § 626.9541

advantage, or any monetary consideration or inducement whatever. Nothing herein contained shall preclude an abatement in an attorney's fee charged for legal services.

b. Nothing in this subparagraph shall be construed as prohibiting the payment of fees to attorneys at law duly licensed to practice law in the courts of this state, for professional services, or as prohibiting the payment of earned portions of the premium to duly appointed agents or agencies who actually perform services for the title insurer.

c. No insured named in a policy, or any other person directly or indirectly connected with the transaction involving the issuance of such policy, including, but not limited to, any mortgage broker, real estate broker, builder, or attorney, any employee, agent, agency, or representative thereof, or any other person whatsoever, shall knowingly receive or accept, directly or indirectly, any rebate or abatement of said charge, or any monetary consideration or inducement, other than as set forth in sub-subparagraph b.

(i) *Unfair claim settlement practices.*--

1. Attempting to settle claims on the basis of an application, when serving as a binder or intended to become a part of the policy, or any other material document which was altered without notice to, or knowledge or consent of, the insured;

2. A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy; or

3. Committing or performing with such frequency as to indicate a general business practice any of the following:

a. Failing to adopt and implement standards for the proper investigation of claims;

b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c. Failing to acknowledge and act promptly upon communications with respect to claims;

d. Denying claims without conducting reasonable investigations based upon available information;

e. Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed;

f. Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

g. Failing to promptly notify the insured of any additional information necessary for the processing of a claim; or

h. Failing to clearly explain the nature of the requested information and the reasons why such information is necessary.

(j) *Failure to maintain complaint-handling procedures.*--Failure of any person to maintain a complete record of all the complaints received since the date of the last examination. For purposes of this paragraph, "complaint" means any written communication primarily expressing a grievance.

(k) *Misrepresentation in insurance applications.*--

1. Knowingly making a false or fraudulent written or oral statement or representation on, or relative to, an application or negotiation for an insurance policy for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, or individual.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541                                                    Page 6
West's F.S.A. § 626.9541

2. Knowingly making a material omission in the comparison of a life, health, or Medicare supplement insurance replacement policy with the policy it replaces for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, or individual. For the purposes of this subparagraph, a material omission includes the failure to advise the insured of the existence and operation of a preexisting condition clause in the replacement policy.

(l) *Twisting.*--Knowingly making any misleading representations or incomplete or fraudulent comparisons or fraudulent material omissions of or with respect to any insurance policies or insurers for the purpose of inducing, or tending to induce, any person to lapse, forfeit, surrender, terminate, retain, pledge, assign, borrow on, or convert any insurance policy or to take out a policy of insurance in another insurer.

(m) *Advertising gifts permitted.*--No provision of paragraph (f), paragraph (g), or paragraph (h) shall be deemed to prohibit a licensed insurer or its agent from giving to insureds, prospective insureds, and others, for the purpose of advertising, any article of merchandise having a value of not more than $25.

(n) *Free insurance prohibited.*--

1. Advertising, offering, or providing free insurance as an inducement to the purchase or sale of real or personal property or of services directly or indirectly connected with such real or personal property.

2. For the purposes of this paragraph, "free" insurance is:

a. Insurance for which no identifiable and additional charge is made to the purchaser of such real property, personal property, or services.

b. Insurance for which an identifiable or additional charge is made in an amount less than the cost of such insurance as to the seller or other person, other than the insurer, providing the same.

3. Subparagraphs 1. and 2. do not apply to:

a. Insurance of, loss of, or damage to the real or personal property involved in any such sale or services, under a policy covering the interests therein of the seller or vendor.

b. Blanket disability insurance as defined in s. 627.659.

c. Credit life insurance or credit disability insurance.

d. Any individual, isolated, nonrecurring unadvertised transaction not in the regular course of business.

e. Title insurance.

f. Any purchase agreement involving the purchase of a cemetery lot or lots in which, under stated conditions, any balance due is forgiven upon the death of the purchaser.

g. Life insurance, trip cancellation insurance, or lost baggage insurance offered by a travel agency as part of a travel package offered by and booked through the agency.

4. Using the word "free" or words which imply the provision of insurance without a cost to describe life or disability insurance, in connection with the advertising or offering for sale of any kind of goods, merchandise, or services.

(o) *Illegal dealings in premiums; excess or reduced charges for insurance.*--

1. Knowingly collecting any sum as a premium or charge for insurance, which is not then provided, or is not in due course to be provided, subject to acceptance of the risk by the insurer, by an insurance policy issued by an insurer as permitted by this code.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2. Knowingly collecting as a premium or charge for insurance any sum in excess of or less than the premium or charge applicable to such insurance, in accordance with the applicable classifications and rates as filed with and approved by the department, and as specified in the policy; or, in cases when classifications, premiums, or rates are not required by this code to be so filed and approved, premiums and charges in excess of or less than those specified in the policy and as fixed by the insurer. This provision shall not be deemed to prohibit the charging and collection, by surplus lines agents licensed under part VIII of this chapter, of the amount of applicable state and federal taxes, or fees as authorized by s. 626.916(4), in addition to the premium required by the insurer or the charging and collection, by licensed agents, of the exact amount of any discount or other such fee charged by a credit card facility in connection with the use of a credit card, as authorized by subparagraph (q)3., in addition to the premium required by the insurer. This subparagraph shall not be construed to prohibit collection of a premium for a universal life or a variable or indeterminate value insurance policy made in accordance with the terms of the contract.

3. a. Imposing or requesting an additional premium for a policy of motor vehicle liability, personal injury protection, medical payment, or collision insurance or any combination thereof or refusing to renew the policy solely because the insured was involved in a motor vehicle accident unless the insurer's file contains information from which the insurer in good faith determines that the insured was substantially at fault in the accident.

b. An insurer which imposes and collects such a surcharge or which refuses to renew such policy shall, in conjunction with the notice of premium due or notice of nonrenewal, notify the named insured that he or she is entitled to reimbursement of such amount or renewal of the policy under the conditions listed below and will subsequently reimburse him or her or renew the policy, if the named insured demonstrates that the operator involved in the accident was:

(I) Lawfully parked;

(II) Reimbursed by, or on behalf of, a person responsible for the accident or has a judgment against such person;

(III) Struck in the rear by another vehicle headed in the same direction and was not convicted of a moving traffic violation in connection with the accident;

(IV) Hit by a "hit-and-run" driver, if the accident was reported to the proper authorities within 24 hours after discovering the accident;

(V) Not convicted of a moving traffic violation in connection with the accident, but the operator of the other automobile involved in such accident was convicted of a moving traffic violation;

(VI) Finally adjudicated not to be liable by a court of competent jurisdiction;

(VII) In receipt of a traffic citation which was dismissed or nolle prossed; or

(VIII) Not at fault as evidenced by a written statement from the insured establishing facts demonstrating lack of fault which are not rebutted by information in the insurer's file from which the insurer in good faith determines that the insured was substantially at fault.

c. In addition to the other provisions of this subparagraph, an insurer may not fail to renew a policy if the insured has had only one accident in which he or she was at fault within the current 3-year period.   However, an insurer may nonrenew a policy for reasons other than accidents in accordance with s. 627.728. This subparagraph does not prohibit nonrenewal of a policy under which the insured has had three or more accidents, regardless of fault, during the most recent 3-year period.

4. Imposing or requesting an additional premium for, or refusing to renew, a policy for motor vehicle insurance solely because the insured committed a noncriminal traffic infraction as described in s. 318.14 unless the infraction is:

a. A second infraction committed within an 18-month period, or a third or subsequent infraction committed within a

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541                                                    Page 8
West's F.S.A. § 626.9541

36-month period.

b. A violation of s. 316.183, when such violation is a result of exceeding the lawful speed limit by more than 15 miles per hour.

5. Upon the request of the insured, the insurer and licensed agent shall supply to the insured the complete proof of fault or other criteria which justifies the additional charge or cancellation.

6. No insurer shall impose or request an additional premium for motor vehicle insurance, cancel or refuse to issue a policy, or refuse to renew a policy because the insured or the applicant is a handicapped or physically disabled person, so long as such handicap or physical disability does not substantially impair such person's mechanically assisted driving ability.

7. No insurer may cancel or otherwise terminate any insurance contract or coverage, or require execution of a consent to rate endorsement, during the stated policy term for the purpose of offering to issue, or issuing, a similar or identical contract or coverage to the same insured with the same exposure at a higher premium rate or continuing an existing contract or coverage with the same exposure at an increased premium.

8. No insurer may issue a nonrenewal notice on any insurance contract or coverage, or require execution of a consent to rate endorsement, for the purpose of offering to issue, or issuing, a similar or identical contract or coverage to the same insured at a higher premium rate or continuing an existing contract or coverage at an increased premium without meeting any applicable notice requirements.

9. No insurer shall, with respect to premiums charged for motor vehicle insurance, unfairly discriminate solely on the basis of age, sex, marital status, or scholastic achievement.

10. Imposing or requesting an additional premium for motor vehicle comprehensive or uninsured motorist coverage solely because the insured was involved in a motor vehicle accident or was convicted of a moving traffic violation.

11. No insurer shall cancel or issue a nonrenewal notice on any insurance policy or contract without complying with any applicable cancellation or nonrenewal provision required under the Florida Insurance Code.

12. No insurer shall impose or request an additional premium, cancel a policy, or issue a nonrenewal notice on any insurance policy or contract because of any traffic infraction when adjudication has been withheld and no points have been assessed pursuant to s. 318.14(9) and (10).  However, this subparagraph does not apply to traffic infractions involving accidents in which the insurer has incurred a loss due to the fault of the insured.

(p) *Insurance cost specified in "price package".--*

1. When the premium or charge for insurance of or involving such property or merchandise is included in the overall purchase price or financing of the purchase of merchandise or property, the vendor or lender shall separately state and identify the amount charged and to be paid for the insurance, and the classifications, if any, upon which based;  and the inclusion or exclusion of the cost of insurance in such purchase price or financing shall not increase, reduce, or otherwise affect any other factor involved in the cost of the merchandise, property, or financing as to the purchaser or borrower.

2. This paragraph does not apply to transactions which are subject to the provisions of part I of chapter 520, entitled "The Motor Vehicle Sales Finance Act."

3. This paragraph does not apply to credit life or credit disability insurance which is in compliance with s. 627.681(4).

(q) Certain insurance transactions through credit card facilities prohibited.

1. Except as provided in subparagraph 3., no person shall knowingly solicit or negotiate any insurance;  seek or accept applications for insurance;  issue or deliver any policy;  receive, collect, or transmit premiums, to or for any

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541                                                                                      Page 9
West's F.S.A. § 626.9541

insurer; or otherwise transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, through the arrangement or facilities of a credit card facility or organization, for the purpose of insuring credit card holders or prospective credit card holders. The term "credit card holder" as used in this paragraph means any person who may pay the charge for purchases or other transactions through the credit card facility or organization, whose credit with such facility or organization is evidenced by a credit card identifying such person as being one whose charges the credit card facility or organization will pay, and who is identified as such upon the credit card either by name, account number, symbol, insignia, or any other method or device of identification. This subparagraph does not apply as to health insurance or to credit life, credit disability, or credit property insurance.

2. Whenever any person does or performs in this state any of the acts in violation of subparagraph 1. for or on behalf of any insurer or credit card facility, such insurer or credit card facility shall be held to be doing business in this state and, if an insurer, shall be subject to the same state, county, and municipal taxes as insurers that have been legally qualified and admitted to do business in this state by agents or otherwise are subject, the same to be assessed and collected against such insurers; and such person so doing or performing any of such acts shall be personally liable for all such taxes.

3. A licensed agent or insurer may solicit or negotiate any insurance; seek or accept applications for insurance; issue or deliver any policy; receive, collect, or transmit premiums, to or for any insurer; or otherwise transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, through the arrangement or facilities of a credit card facility or organization, for the purpose of insuring credit card holders or prospective credit card holders if:

a. The insurance or policy which is the subject of the transaction is noncancelable by any person other than the named insured, the policyholder, or the insurer;

b. Any refund of unearned premium is made directly to the credit card holder; and

c. The credit card transaction is authorized by the signature of the credit card holder or other person authorized to sign on the credit card account.

The conditions enumerated in sub-subparagraphs a.-c. do not apply to health insurance or to credit life, credit disability, or credit property insurance; and sub-subparagraph c. does not apply to property and casualty insurance so long as the transaction is authorized by the insured.

4. No person may use or disclose information resulting from the use of a credit card in conjunction with the purchase of insurance, when such information is to the advantage of such credit card facility or an insurance agent, or is to the detriment of the insured or any other insurance agent; except that this provision does not prohibit a credit card facility from using or disclosing such information in any judicial proceeding or consistent with applicable law on credit reporting.

5. No such insurance shall be sold through a credit card facility in conjunction with membership in any automobile club. The term "automobile club" means a legal entity which, in consideration of dues, assessments, or periodic payments of money, promises its members or subscribers to assist them in matters relating to the ownership, operation, use, or maintenance of a motor vehicle; however, the definition of automobile clubs does not include persons, associations, or corporations which are organized and operated solely for the purpose of conducting, sponsoring, or sanctioning motor vehicle races, exhibitions, or contests upon racetracks, or upon race courses established and marked as such for the duration of such particular event. The words "motor vehicle" used herein shall be the same as defined in chapter 320.

(r) *Interlocking ownership and management.--*

1. Any domestic insurer may retain, invest in, or acquire the whole or any part of the capital stock of any other insurer or insurers, or have a common management with any other insurer or insurers, unless such retention, investment, acquisition, or common management is inconsistent with any other provision of this code, or unless by

FL ST § 626.9541                                                                    Page 10
West's F.S.A. § 626.9541

reason thereof the business of such insurers with the public is conducted in a manner which substantially lessens competition generally in the insurance business.

2. Any person otherwise qualified may be a director of two or more domestic insurers which are competitors, unless the effect thereof is substantially to lessen competition between insurers generally or materially tend to create a monopoly.

3. Any limitation contained in this paragraph does not apply to any person who is a director of two or more insurers under common control or management.

(s) *Prohibited arrangements as to funerals.--*

1. No life insurer shall designate in any life insurance policy the person to conduct the funeral of the insured, or organize, promote, or operate any enterprise or plan to enter into any contract with any insured under which the freedom of choice in the open market of the person having the legal right to such choice is restricted as to the purchase, arrangement, and conduct of a funeral service or any part thereof for any individual insured by the insurer. No life insurer shall designate in any life insurance policy the person to conduct the funeral of the insured as the owner of the policy.

2. No insurer shall contract or agree to furnish funeral merchandise or services in connection with the disposition of any person upon the death of any person insured by such insurer.

3. No insurer shall contract or agree with any funeral director or direct disposer to the effect that such funeral director or direct disposer shall conduct the funeral of any person insured by such insurer.

4. No insurer shall provide, in any insurance contract covering the life of any person in this state, for the payment of the proceeds or benefits thereof in other than legal tender of the United States and of this state, or for the withholding of such proceeds or benefits, all for the purpose of either directly or indirectly providing, inducing, or furthering any arrangement or agreement designed to require or induce the employment of a particular person to conduct the funeral of the insured.

(t) *Certain life insurance relations with funeral directors prohibited.--*

1. No life insurer shall permit any funeral director or direct disposer to act as its representative, adjuster, claim agent, special claim agent, or agent for such insurer in soliciting, negotiating, or effecting contracts of life insurance on any plan or of any nature issued by such insurer or in collecting premiums for holders of any such contracts except as prescribed in s. 626.785(3).

2. No life insurer shall:

a. Affix, or permit to be affixed, advertising matter of any kind or character of any licensed funeral director or direct disposer to such policies of insurance.

b. Circulate, or permit to be circulated, any such advertising matter with such insurance policies.

c. Attempt in any manner or form to influence policyholders of the insurer to employ the services of any particular licensed funeral director or direct disposer.

3. No such insurer shall maintain, or permit its agent to maintain, an office or place of business in the office, establishment, or place of business of any funeral director or direct disposer in this state.

(u) *False claims; obtaining or retaining money dishonestly.--*

1. Any agent, physician, claimant, or other person who causes to be presented to any insurer a false claim for payment, knowing the same to be false; or

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541
West's F.S.A. § 626.9541

2. Any agent, collector, or other person who represents any insurer or collects or does business without the authority of the insurer, secures cash advances by false statements, or fails to turn over when required, or satisfactorily account for, all collections of such insurer,

shall, in addition to the other penalties provided in this act, be guilty of a misdemeanor of the second degree and, upon conviction thereof, shall be subject to the penalties provided by s. 775.082 or s. 775.083.

(v) *Proposal required.*--If a person simultaneously holds a securities license and a life insurance license, he or she shall prepare and leave with each prospective buyer a written proposal, on or before delivery of any investment plan. "Investment plan" means a mutual funds program, and the proposal shall consist of a prospectus describing the investment feature and a full illustration of any life insurance feature. The proposal shall be prepared in duplicate, dated, and signed by the licensee. The original shall be left with the prospect, the duplicate shall be retained by the licensee for a period of not less than 3 years, and a copy shall be furnished to the department upon its request. In lieu of a duplicate copy, a receipt for standardized proposals filed with the department may be obtained and held by the licensee.

(w) *Soliciting or accepting new or renewal insurance risks by insolvent or impaired insurer prohibited; penalty.*--

1. Whether or not delinquency proceedings as to the insurer have been or are to be initiated, but while such insolvency or impairment exists, no director or officer of an insurer, except with the written permission of the Department of Insurance, shall authorize or permit the insurer to solicit or accept new or renewal insurance risks in this state after such director or officer knew, or reasonably should have known, that the insurer was insolvent or impaired. "Impaired" includes impairment of capital or surplus, as defined in s. 631.011(12) and (13).

2. Any such director or officer, upon conviction of a violation of this paragraph, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(x) *Refusal to insure.*-- In addition to other provisions of this code, the refusal to insure, or continue to insure, any individual or risk solely because of:

1. Race, color, creed, marital status, sex, or national origin;

2. The residence, age, or lawful occupation of the individual or the location of the risk, unless there is a reasonable relationship between the residence, age, or lawful occupation of the individual or the location of the risk and the coverage issued or to be issued;

3. The insured's or applicant's failure to agree to place collateral business with any insurer, unless the coverage applied for would provide liability coverage which is excess over that provided in policies maintained on property or motor vehicles;

4. The insured's or applicant's failure to purchase noninsurance services or commodities, including automobile services as defined in s. 624.124; or

5. The fact that the insured or applicant had been previously refused insurance coverage by any insurer, when such refusal to insure or continue to insure for this reason occurs with such frequency as to indicate a general business practice.

(y) *Powers of attorney.*--Except as provided in s. 627.842(2):

1. Requiring, as a condition to the purchase or continuation of an insurance policy, that an applicant for insurance or an insured execute a power of attorney in favor of an insurance agent or agency or employee thereof; or

2. Presenting to the applicant or the insured, as a routine business practice, a form that authorizes the insurance agent or agency to sign the applicant's or insured's name on any insurance-related document or application for the purchase of motor vehicle services as described in s. 624.124. To be valid, a power of attorney must be an act or

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

practice other than as described in this paragraph, must be a separate writing in a separate document, must be executed with the full knowledge and consent of the applicant or insured who grants the power of attorney, must be in the best interests of the insured or applicant, and a copy of the power of attorney must be provided to the applicant or insured at the time of the transaction.

(z) *Sliding.*--Sliding is the act or practice of:

1. Representing to the applicant that a specific ancillary coverage or product is required by law in conjunction with the purchase of motor vehicle insurance when such coverage or product is not required;

2. Representing to the applicant that a specific ancillary coverage or product is included in the motor vehicle policy applied for without an additional charge when such charge is required;  or

3. Charging an applicant for a specific ancillary coverage or product, in addition to the cost of the motor vehicle insurance coverage applied for, without the informed consent of the applicant.

(aa) *Churning.*--

1. Churning is the practice whereby policy values in an existing life insurance policy or annuity contract, including, but not limited to, cash, loan values, or dividend values, and in any riders to that policy or contract, are utilized to purchase another insurance policy or annuity contract with that same insurer for the purpose of earning additional premiums, fees, commissions, or other compensation:

a. Without an objectively reasonable basis for believing that the replacement or extraction will result in an actual and demonstrable benefit to the policyholder;

b. In a fashion that is fraudulent, deceptive, or otherwise misleading or that involves a deceptive omission;

c. Effective October 1, 1995, when the applicant is not informed that the policy values including cash values, dividends, and other assets of the existing policy or contract will be reduced, forfeited, or utilized in the purchase of the replacing or additional policy or contract, if this is the case;  or

d. Effective October 1, 1995, without informing the applicant that the replacing or additional policy or contract will not be a paid-up policy or that additional premiums will be due, if this is the case.

Churning by an insurer or an agent is an unfair method of competition and an unfair or deceptive act or practice.

2. Effective October 1, 1995, each insurer shall comply with sub-subparagraphs 1.c. and 1.d. by disclosing to the applicant at the time of the offer on a form designed and adopted by rule by the department if, how, and the extent to which the policy or contract values (including cash value, dividends, and other assets) of a previously issued policy or contract will be used to purchase a replacing or additional policy or contract with the same insurer.  The form shall include disclosure of the premium, the death benefit of the proposed replacing or additional policy, and the date when the policy values of the existing policy or contract will be insufficient to pay the premiums of the replacing or additional policy or contract.

3. Effective October 1, 1995, each insurer shall adopt written procedures to reasonably avoid churning of policies or contracts that it has issued, and failure to adopt written procedures sufficient to reasonably avoid churning shall be an unfair method of competition and an unfair or deceptive act or practice.

**(2) Alternative rates of payment.--**

Nothing in this section shall be construed to prohibit an insurer or insurers from negotiating or entering into contracts with licensed health care providers for alternative rates of payment, or from limiting payments under policies pursuant to agreements with insureds, as long as the insurer offers the benefit of such alternative rates to insureds who select designated providers.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541                                                                                    Page 13
West's F.S.A. § 626.9541

CREDIT(S)

2002 Electronic Pocket Part Update

Amended by Laws 1997, c. 97-102, § 314, eff. July 1, 1997; Laws 1999, c. 99-3, § 24, eff. June 29, 1999; Laws 1999, c. 99-286, § 5, eff. July 1, 1999; Laws 1999, c. 99-388, § 1, eff. July 1, 1999; Laws 2000, c. 2000-192, § 2, eff. June 5, 2000; Laws 2001, c. 2001-178, § 1, eff. July 1, 2001; Laws 2002, c. 2002-25, § 2, eff. July 1, 2002; Laws 2002, c. 2002-55, § 7, eff. Jan. 1, 2003; Laws 2002, c. 2002-206, § 65, eff. Oct. 1, 2002.

[FN1] Other references to solicitors were repealed or deleted by Laws 2002, c, 2002-206.

HISTORICAL AND STATUTORY NOTES

1996 Main Volume

**Derivation:**
Laws 1995, c. 95-219, § 1.
Laws 1995, c. 95-187, § 6.
Laws 1992, c. 92-146, § 38.
Laws 1991, c. 91-224, § 256.
Laws 1991, c. 91-110, § 58.
Laws 1990, c. 90-363, § 186.
Laws 1990, c. 90-119, § 33.
Laws 1990, c. 90-85, § 1.
Laws 1989, c. 89-360, § 60.
Laws 1988, c. 88-370, § 13.
Laws 1987, c. 87-226, § 27.
Laws 1986, c. 86-160, § 4.
Laws 1985, c. 85-233, § 1.
Laws 1985, c. 85-182, § 3.
Laws 1985, c. 85-62, § 14.
Laws 1984, c. 84-157, § 1.
Laws 1983, c. 83-342, § § 1, 2.
Laws 1983, c. 83-216, § 90.
Laws 1982, c. 82-235, § 1.
Laws 1980, c. 80-373, § 1.
Laws 1980, c. 80-152, § 1.
Laws 1979, c. 79-289, § 1.
Laws 1978, c. 78-377, § 1.
Laws 1977, c. 77-468, § 19.
Laws 1977, c. 77-174, § 1.
Laws 1976, c. 76-260, § 9.

Laws 1976, c. 76-260, § 17, provides that the act take effect July 1, 1976, except for those provisions contained in § § 768.42 and 768.43 which are to take effect on January 1, 1977, and provides further that the act "shall apply to all actions filed thereafter."

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FL ST § 626.9541                                                                              Page 14
West's F.S.A. § 626.9541

Laws 1980, c. 80-373, provided therein that the law take effect July 1, 1980; however, approval by the governor occurred subsequent thereto. The Florida Supreme Court in an advisory opinion to the governor of July 19, 1979 (374 So.2d 959) stated in part "* * * the effective date provided in the bill is inoperative unless the bill becomes law on or before that date" and concludes that under such circumstances the provision of Const. Art. 3, § 9, that the law take effect on the sixtieth day after adjournment since die of the session of the legislature in which enacted is applicable.

Laws 1988, c. 88-370, § 28, provides that changes made by the act for purposes of this section "apply to motor vehicle insurance policies issued on or after" October 1, 1988.

Laws 1990, c. 90-119, § 55, eff. Oct. 1, 1990, provides:

"Except as otherwise expressly provided in this act, this act shall take effect October 1, 1990, and shall apply to policies or contracts issued or renewed on or after that date."

West's F. S. A. § **626.9541**

FL ST § **626.9541**

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# EXHIBIT  4

# ASSIGNMENT OF RIGHTS

WHEREAS, CNA has agreed to assign any and all rights it has or may have against Paradise Divers' vessel insurer, ACE American Insurance Company, successor in interest to CIGNA Insurance Company, arising out of or related in any way to the claim of Kevin R. Upmal and the related litigation, in exchange for and as partial consideration for Paradise Divers' agreement to provide a General Release to CNA which shall be executed by Paradise Divers and provided to CNA's counsel upon receipt of this assignment, fully executed by CNA:

## Definitions

1. For the purpose of this assignment "CNA" means CNA itself, Columbia Casualty, and any other CNA subsidiary or related entity involved in claims investigation, claims handling, or the payment of costs, legal fees, or any other expenses of its own or on Paradise Divers' behalf related to The Upmal Claim or The Coverage Claim;

2. "The Upmal Claim" means Upmal's claims or potential claims for damages against Paradise Divers or against Captain Noel Kartman, including those claims arising out of the various lawsuits involving Kevin Upmal, specifically including Case Number CAM-02-317 styled <u>Kevin R. Upmal v. Paradise Divers, Inc.</u> in the Sixteenth Judicial Circuit in and for Monroe County, Florida or any other action, state or federal;

3. "The Coverage Claim" means the claim made by Paradise Divers for coverage of indemnity and the duty to defend from CNA under the PADI program which insured Noel Kartman through a certificate of insurance.

## The Assignment of Rights

4. Subject to the definitions above CNA hereby assigns, with no reservation, all of its rights, whether legal or equitable, whether statutory, common law or contractual, against ACE American Insurance Company, CIGNA Insurance Company, or any other entity which is or may be responsible to reimburse or indemnify CNA or its subsidiary entities for the monies paid by it related in any way to The Upmal Claim and/or The Coverage Claim.  This assignment includes, but is not limited to: attorney's fees and costs paid on Paradise Divers' behalf by CNA to McAlpin & Brais, defense counsel for Paradise Divers in the Upmal litigations; mediation fees paid by CNA; the amount of the settlement paid by CNA to Kevin R. Upmal in

exchange for its agreement to dismiss certain claims and not to execute upon a judgment against Paradise Divers, its principals, vessels or Noel Kartman; and attorney's fees and costs paid by CNA to its coverage counsel related to monitoring of The Upmal Claim or related to The Coverage Claim.

5. CNA represents and reaffirms through its execution of this assignment of rights agreement that it has not assigned the subject rights to any other person or entity.

CNA

By: _Judith Laws_

Its: _Claims Consultant_

STATE OF _Colorado_
COUNTY OF _Douglas_

The foregoing instrument was acknowledged before me this 27th day of _August_, 2006, by _Madeleine T. Hall_, _____ of CNA, who is personally known to me OR who produced _Driver License_ as identification, and who did/did not take an oath.

_Madeleine T. Hall_
[Signature of Notary Public]

_Madeleine T. Hall_
[Notary's name printed or typed]
NOTARY PUBLIC
State of _Colorado_
My Commission expires: _3/15/2008_

# EXHIBIT  5



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**
DIVISION OF CONSUMER SERVICES — CONSUMER ASSISTANCE

| DFS FILE #: | |
|---|---|

## CIVIL REMEDY NOTICE OF INSURER VIOLATION
### INSTRUCTION FOR COMPLETING THIS FORM ON REVERSE SIDE

| Date Submitted: September 21, 2007 | INS.CO. FEIN: 95-2371728 |
|---|---|

| 1. Company: | ACE American Insurance Company |
|---|---|
| Street Address: | 436 Walnut Street |
| City/State/Zip: | Philadelphia, PA 19106 |
| Individual(s) Involved: | Rosanne Williams |

**This notice is given for the purpose of perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.**

☒ Insured, Inc.   ☐ Third Party   ☒ Other

2. Complainant: Paradise Divers, as Assignee of CNA

| Insured Name: Paradise Divers, Inc. | Policy No: SPC 6139905 |
|---|---|
| Complainant Name: Paradise Divers, Inc. | Claim No: 1305831708-9/434 |

Attorney (if any): Michelle M. Niemeyer, Esq., Michelle M. Niemeyer, P.A.

| Street Address: 3250 Mary Street, Suite 302 | |
|---|---|
| City/State/Zip/Cty: Coconut Grove   FL   33133 | |

**3. TYPE OF INSURANCE:**
☐ Accident & Health   ☐ Life & Annuity   ☐ Residential Property & Casualty
☐ Medicare Supplement   ☐ Auto   ☐ Commercial Property & Casualty
☒ Miscellaneous

**4. REASON FOR NOTICE:**
☐ Cancellation/Non-renew   ☒ Claim Denial   ☒ Unsatisfactory Settlement Offer
☒ Claim Delay   ☒ Unfair Trade Practice   ☐ Other

**5. PURSUANT TO SECTION 624.155, F.S.** please provide the statutory provision, including the specific language of the statute, which the insurer allegedly violated.

List Statute numbers: § 624.155 (1)(a)(1); 624.155(1)(b)(1); 626.9541

Statute Language:   See attached.

**6. Briefly** reference the specific policy language that is relevant to the violation, if any. If the person brining the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

See attached.

**7. Briefly** describe the facts and circumstances giving rise to the violation.

mate injured in 2000. CIGNA (predecessor in interest to ACE) refused to pay mate's medical bills pursuant to maintenance and cure obligation. Two years later crew member sued under several theories including ones that triggered CNA's defense obligation. No suit would have been filed if maintenance and cure were paid. Coverage was established by summary judgment. CNA was harmed by a minimum of $750,000 (defense costs and settlement of mate's claim to protect Paradise Divers.) At time CNA settled, ACE was unwilling to offer sufficient funds to fully resolve the lawsuit.

DFS-I0-363
Rev. 9/2005

1 of 1 DOCUMENT

LexisNexis (R) Florida Annotated Statutes
Copyright (c) 2006 by Matthew Bender & Company, Inc. a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT IS CURRENT WITH LEGISLATION THROUGH \*\*\*
\*\*\* THE 2006 REGULAR SESSION INCLUDING H.J.R. 353, \*\*\*
\*\*\* H.J.R. 631, H.J.R. 1569, AND S.J.R. 2788 \*\*\*
\*\*\* ANNOTATIONS CURRENT THROUGH NOVEMBER 9, 2006 \*\*\*

TITLE 37.  INSURANCE (Chs. 624-651)
CHAPTER 624.  INSURANCE CODE: ADMINISTRATION AND GENERAL PROVISIONS
PART I.  SCOPE OF CODE

**GO TO FLORIDA STATUTES ARCHIVE DIRECTORY**

*Fla. Stat. § 624.155* (2006)

§ 624.155.  Civil remedy

(1) Any person may bring a civil action against an insurer when such person is damaged:

(a) By a violation of any of the following provisions by the insurer:

1. Section 626.9541(1)(i), (o), or (x);

2. Section 626.9551;

3. Section 626.9705;

4. Section 626.9706;

5. Section 626.9707; or

6. Section 627.7283.

(b) By the commission of any of the following acts by the insurer:

1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;

2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or

3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

Notwithstanding the provisions of the above to the contrary, a person pursuing a remedy under this section need not prove that such act was committed or performed with such frequency as to indicate a general business practice.

(2) Any party may bring a civil action against an unauthorized insurer if such party is damaged by a violation of s. 624.401 by the unauthorized insurer.

(3) (a) As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed.

Fla. Stat. § 624.155

(b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:

1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

2. The facts and circumstances giving rise to the violation.

3. The name of any individual involved in the violation.

4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

(c) Within 20 days of receipt of the notice, the department may return any notice that does not provide the specific information required by this section, and the department shall indicate the specific deficiencies contained in the notice. A determination by the department to return a notice for lack of specificity shall be exempt from the requirements of chapter 120.

(d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

(e) The authorized insurer that is the recipient of a notice filed pursuant to this section shall report to the department on the disposition of the alleged violation.

(f) The applicable statute of limitations for an action under this section shall be tolled for a period of 65 days by the mailing of the notice required by this subsection or the mailing of a subsequent notice required by this subsection.

(4) Upon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff.

(5) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:

(a) Willful, wanton, and malicious;

(b) In reckless disregard for the rights of any insured; or

(c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

Any person who pursues a claim under this subsection shall post in advance the costs of discovery. Such costs shall be awarded to the authorized insurer if no punitive damages are awarded to the plaintiff.

(6) This section shall not be construed to authorize a class action suit against an authorized insurer or a civil action against the commission, the office, or the department or any of their employees, or to create a cause of action when an authorized health insurer refuses to pay a claim for reimbursement on the ground that the charge for a service was unreasonably high or that the service provided was not medically necessary.

(7) In the absence of expressed language to the contrary, this section shall not be construed to authorize a civil action or create a cause of action against an authorized insurer or its employees who, in good faith, release information about an insured or an insurance policy to a law enforcement agency in furtherance of an investigation of a criminal or fraudulent act relating to a motor vehicle theft or a motor vehicle insurance claim.

(8) The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state. Any person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies. This section shall not be construed to create a common-law cause of action. The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits.

Fla. Stat. § 624.155

(9) A surety issuing a payment or performance bond on the construction or maintenance of a building or roadway project is not an insurer for purposes of subsection (1).

**HISTORY:** ss. 9, 809(1st), ch. 82-243; s. 78, ch. 83-216; s. 2, ch. 83-288; s. 2, ch. 86-262; s. 1, ch. 87-278; s. 1, ch. 88-166; s. 30, ch. 90-119; ss. 187, 188, ch. 91-108; s. 4, ch. 91-429; s. 176, ch. 97-102; s. 2, ch. 2003-148; s. 757, ch. 2003-261; s. 2, ch. 2005-218.

**NOTES:**

AMENDMENTS
The 2003 amendment by s. 2, ch. 2003-148, effective July 1, 2003, added (2), redesignated former (2) through (7) as (3) through (8); and substituted "authorized insurer" or "authorized health insurer" for "insurer" or "health insurer" throughout the section. The 2003 amendment by s. 757, ch. 2003-261, effective June 26, 2003, in former (5,) now (6), substituted "the commission, the office, or the department or any of their employees" for "the department, its employees, or the Insurance Commissioner." The 2005 amendment by s. 2, ch. 2005-218, effective June 14, 2005, added (9).

LexisNexis (R) Notes:

CASE NOTES

1. Insured's claim against insurer for statutory bad faith under Fla. Stat. ch. 624.155(1)(b)1 was dismissed without prejudice as being premature where damages had yet to be determined in the first-party action and insured's claim for statutory bad faith was not ripe. *Liberty Mut. Ins. Co. v. Farm, Inc., 754 So. 2d 865, 2000 Fla. App. LEXIS 4294, 25 Fla. L. Weekly D 896 (Fla. Dist. Ct. App. 3d Dist. 2000).*

2. Where plaintiff insurer sued defendant contractor for losses under a state department of transportation road project surety bond and indemnity agreement, and the contractor's counterclaim under Fla. Stat. ch. 624.155 and Fla. Stat. ch. 626.9541(1)(i)(3)(a), (c), alleged the insurer failed to investigate whether the state properly defaulted the contractor and failed to preserve the contractor's claims against the state, and a parallel state court action was pending between the contractor and the state, abstention was proper under Colorado River, and was also proper under Burford because the United States Court of Appeals for the Eleventh Circuit had, in another case, certified questions to the Florida Supreme Court on the issues of whether the Florida statutes provided for causes of action against sureties and, if so, whether unfair settlement practices had to be proven as a general business practice; the issues in the certified questions were not settled even though the Florida legislature had amended Fla. Stat. ch. 624.155. *St. Paul Fire & Marine Ins. Co. v. White Constr. Co., 2005 U.S. Dist. LEXIS 28101 (N.D. Fla. Nov. 10 2005).*

3. Where plaintiffs filed action against insurer for recovery on unearned premiums between stated policy cancellation date and actual cancellation date under Fla. Stat. ch. 624.155, failure to comply with 60-day notice requirement did not bar action. *Stinson v. United Auto. Ins. Co., 734 So. 2d 505, 1999 Fla. App. LEXIS 6441, 24 Fla. L. Weekly D 1197 (Fla. Dist. Ct. App. 3d Dist. 1999).*

1 of 1 DOCUMENT

LexisNexis (R) Florida Annotated Statutes
Copyright (c) 2006 by Matthew Bender & Company, Inc. a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT IS CURRENT WITH LEGISLATION THROUGH ***
*** THE 2006 REGULAR SESSION INCLUDING H.J.R. 353, ***
*** H.J.R. 631, H.J.R. 1569, AND S.J.R. 2788 ***
*** ANNOTATIONS CURRENT THROUGH NOVEMBER 9, 2006 ***

TITLE 37.  INSURANCE (Chs. 624-651)
CHAPTER 626.  INSURANCE FIELD REPRESENTATIVES AND OPERATIONS
PART IX.  UNFAIR INSURANCE TRADE PRACTICES

### GO TO FLORIDA STATUTES ARCHIVE DIRECTORY

*Fla. Stat. § 626.9541 (2006)*

§ 626.9541.  Unfair methods of competition and unfair or deceptive acts or practices defined

(1)  *UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.* --The following are defined as unfair methods of competition and unfair or deceptive acts or practices:

(a)  *Misrepresentations and false advertising of insurance policies.* --Knowingly making, issuing, circulating, or causing to be made, issued, or circulated, any estimate, illustration, circular, statement, sales presentation, omission, or comparison which:

1. Misrepresents the benefits, advantages, conditions, or terms of any insurance policy.

2. Misrepresents the dividends or share of the surplus to be received on any insurance policy.

3. Makes any false or misleading statements as to the dividends or share of surplus previously paid on any insurance policy.

4. Is misleading, or is a misrepresentation, as to the financial condition of any person or as to the legal reserve system upon which any life insurer operates.

5. Uses any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof.

6. Is a misrepresentation for the purpose of inducing, or tending to induce, the lapse, forfeiture, exchange, conversion, or surrender of any insurance policy.

7. Is a misrepresentation for the purpose of effecting a pledge or assignment of, or effecting a loan against, any insurance policy.

8. Misrepresents any insurance policy as being shares of stock or misrepresents ownership interest in the company.

9. Uses any advertisement that would mislead or otherwise cause a reasonable person to believe mistakenly that the state or the Federal Government is responsible for the insurance sales activities of any person or stands behind any person's credit or that any person, the state, or the Federal Government guarantees any returns on insurance products or is a source of payment of any insurance obligation of or sold by any person.

(b)  *False information and advertising generally.* --Knowingly making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public:

Fla. Stat. § 626.9541

b. Nothing in this subparagraph shall be construed as prohibiting the payment of fees to attorneys at law duly licensed to practice law in the courts of this state, for professional services, or as prohibiting the payment of earned portions of the premium to duly appointed agents or agencies who actually perform services for the title insurer.

c. No insured named in a policy, or any other person directly or indirectly connected with the transaction involving the issuance of such policy, including, but not limited to, any mortgage broker, real estate broker, builder, or attorney, any employee, agent, agency, or representative thereof, or any other person whatsoever, shall knowingly receive or accept, directly or indirectly, any rebate or abatement of said charge, or any monetary consideration or inducement, other than as set forth in sub-subparagraph b.

(i) *Unfair claim settlement practices.*

1. Attempting to settle claims on the basis of an application, when serving as a binder or intended to become a part of the policy, or any other material document which was altered without notice to, or knowledge or consent of, the insured;

2. A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy; or

3. Committing or performing with such frequency as to indicate a general business practice any of the following:

a. Failing to adopt and implement standards for the proper investigation of claims;

b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c. Failing to acknowledge and act promptly upon communications with respect to claims;

d. Denying claims without conducting reasonable investigations based upon available information;

e. Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed;

f. Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

g. Failing to promptly notify the insured of any additional information necessary for the processing of a claim; or

h. Failing to clearly explain the nature of the requested information and the reasons why such information is necessary.

(j) *Failure to maintain complaint-handling procedures.* --Failure of any person to maintain a complete record of all the complaints received since the date of the last examination. For purposes of this paragraph, "complaint" means any written communication primarily expressing a grievance.

(k) *Misrepresentation in insurance applications.*

1. Knowingly making a false or fraudulent written or oral statement or representation on, or relative to, an application or negotiation for an insurance policy for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, or individual.

2. Knowingly making a material omission in the comparison of a life, health, or Medicare supplement insurance replacement policy with the policy it replaces for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, or individual. For the purposes of this subparagraph, a material omission includes the failure to advise the insured of the existence and operation of a preexisting condition clause in the replacement policy.

(l) *Twisting.* --Knowingly making any misleading representations or incomplete or fraudulent comparisons or fraudulent material omissions of or with respect to any insurance policies or insurers for the purpose of inducing, or tending to induce, any person to lapse, forfeit, surrender, terminate, retain, pledge, assign, borrow on, or convert any insurance policy or to take out a policy of insurance in another insurer.

CIGNA INSURANCE COMPANY - INSPECTED POLICY

POLICY # - SPC6139905  RENEWAL OF # - Same

NAMED INSURED AND ADDRESS:
  Paradise Divers, Inc *
  38801 Overseas Hwy

AGENCY CODE, NAME & ADDRESS:

  Charter Lakes Insurance Agency
  P.O. Box 8797
  Kentwood          MI  49518

  Big Pine Key      FL  33043

POLICY PERIOD:
  From  11/25/99  To  11/25/00    Beginning and ending at 12:01 A.M. Standard time at the place of issuance of this policy.
UPON THE INSURED BOAT:
  Name -                          Hull ID # - D929003    Year - 1988 Length -  30 Manuf. - Island Hopper
  Type - Cruiser                                                              Model - Lobster
UPON THE ENGINES DESCRIBED AS:
  1998 Cummins          Diesel 350 HP. IB S/N - 44980066    Value - INCLUDED
UPON THE BOAT TRAILER DESCRIBED AS:
  0   S/N -
UPON THE DINGHY(S) DESCRIBED AS:
THE INSURED BOAT WILL BE PRINCIPALLY MOORED OR BERTHED AT:
  Big Pine Key
LOSS, IF ANY, PAYABLE TO INSURED AND:

ADDITIONAL INSURED:

COVERAGE IS PROVIDED ONLY WHERE THE AMOUNT OF INSURANCE OR LIMIT OF LIABILITY IS SHOWN AND WHERE SPECIFIC PREMIUM CHARGES OR THE WORD 'INCLUDED' IS SHOWN.

| SECTION | COVERAGES | AMOUNT OF COVERAGE OR LIMIT OF LIABILITY | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| A | HULL & MACHINERY | AGREED VALUATION AND AMOUNT OF INSURANCE | $  50,000.00 | $  1,500.00 | $  1,000.00 |
| A | TENDER | | $      0.00 | $      0.00 | $      0.00 |
| A | TENDER | | $      0.00 | $      0.00 | $      0.00 |
| B | PROTECTION AND INDEMNITY | LOSS OF LIFE, PERSONAL INJURY AND PROPERTY DAMAGE AGGREGATE, LIMIT OF LIABILITY | $1,000,000.00 | $  1,000.00 | $    576.00 |
| C | MEDICAL PAYMENTS | LIMIT OF LIABILITY ANY ONE PERSON | $   5,000.00 | NIL | INCLUDED |
| E | L&HCA | WHATEVER IS REQUIRED UNDER THE LONGSHOREMEN'S AND HARBOR WORKER'S COMPENSATION ACT | INCLUDED | NIL | INCLUDED |
| F | TRAILER | | $      0.00 | $      0.00 | $      0.00 |
| G | PERSONAL PROPERTY | LIMIT OF INSURANCE ANY ONE ACCIDENT | $      0.00 | NIL | INCLUDED |
| | TOWING | | $      0.00 | $      0.00 | $      0.00 |
| | CREW LIABILITY | | $1,000,000.00 | $  1,000.00 | $    800.00 |
| | OTHER | SEE ENDORSEMENTS  MA-8301a ,MA-3W43 | | | $    350.00 |

TOTAL PREMIUM - $  2,726.00

LAYUP PERIOD:
  None
NAVIGATION LIMITS:
  WHILE AFLOAT THIS POLICY COVERS YOUR INSURED BOAT FOR LOSSES WHICH OCCUR ONLY WITHIN THE FOLLOWING NAVIGATION LIMITS:
  As per the vessels Coast Guard Certificate of Inspection
THIS POLICY IS MADE AND ACCEPTED SUBJECT TO THE FOREGOING STIPULATIONS AND CONDITIONS IN YACHT POLICY PART II TOGETHER WITH SUCH
STIPULATIONS AND CONDITIONS AS MAY BE ADDED HERETO BY ENDORESMENT.

COUNTERSIGNED 10/15/99, AT Kentwood        MI  By: _Warren D. Furbin_
            THIS PART 1 WITH YACHT POLICY PART 2 COMPLETES THE ABOVE NUMBERED POLICY.

MA-9X50

CIGNA INSURANCE COMPANY

CAPTAIN AND CREW LIMITATION ENDORSEMENT

This endorsement forms as part of:

Policy Sum. and No:  SPC6139905
              Issued to:    Paradise Divers, Inc *
and is effective on and after:  11/25/99
              Agent:    Charter Lakes Insurance Agency

It is hereby understood and agreed that the above mentioned policy is amended as follows:

We will pay sums which you or a covered person becomes legally obligated to pay as a result of the ownership, operation or maintenance of the insured craft during this policy period, for liability to a captain or crew member provided for under The Jones Act or general maritime law.  This coverage, however, shall not apply to an owner, stockholder, officer, partner or any other person with an ownership interest, legal or equitable, in the insured craft.

The limit of liability shown for protection and indemnity on the declaration page is the maximum amount we will pay for all losses, legal fees and expenses as described above, resulting from any one accident or occurrence.  This is the most we will pay regardless of the number of covered persons involved or claims submitted.

In consideration of the premium charged, it is warranted that there shall not be more than (2) two captain/crew member(s) employed aboard the vessel at any one time, excluding the owner operator or leasee of the vessel.

Also, warranted that in the event additional crew are to be employed, the Assured shall give prior notice to this company and pay such additional premium as is required.  If the Assured shall fail to give such prior notice and at the time of loss in respects to crew there are more crew employed, the insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of the accident.

All other terms and conditions of this policy remain unchanged.

CHARTER LAKES INSURANCE AGENCY
P.O. Box 8797
Kentwood, MI   49508

MA8301a

**PROPERTY SUBJECT TO DEPRECIATION:** In the event of loss or damage to your insured plastic or canvas coverings, inclusive of all-weather bridge and cockpit enclosures, and dodgers, sails, outboard motors or outdrive units, machinery inside the vessel which is over seven years old, or components of any of the preceding items which requires replacement or repair, we will pay the lesser of:
a. the actual cash value at the time of loss;
b. the cost to repair subject to depreciation;
c. the cost of replacement.

**SALVAGE CHARGES:** We will pay for salvage charges you incur arising from a covered loss, however, we will pay no more than the Part A: Property Damage Coverage limit, as shown on the Declarations Page.

**COMMERCIAL TOWING AND ASSISTANCE:** We will provide additional protection in the event there is an emergency situation where you and your vessel are not in imminent danger. The coverage shall be deemed in excess over all other valid and collectible insurance. We will reimburse you for the reasonable costs you incur, not to exceed a total of $500, resulting from the following services to your vessel if help is not available and you must obtain commercial assistance:
a. towing to the nearest place where necessary repairs can be made;
b. delivery of fuel, oil, parts or loaned battery (excluding the cost of these items themselves) or emergency labor, while away from safe harbor.

The policy deductible does not apply to this coverage.

# PART B: LIABILITY COVERAGE

**PERILS INSURED AGAINST:** We will pay sums that you or a covered person become legally obligated to pay as a result of the ownership, operation or maintenance of your insured vessel because of:
a. attempted or actual raising, removal or destruction of the wreck of your insured property;
b. failure to raise, remove or destroy the wreck of your insured property;
c. bodily injury or loss of life;
d. your liability to paid crew as defined in the Jones Act or under general Maritime Law;
e. loss or damage to any property;
f. pollution or contamination of any kind.

**EXCLUSIONS:** We do not provide coverage under Part B: Liability Coverage for:
a. liability of other covered persons to you, your spouse, or other persons who reside in your household;
b. your liability to your spouse, or other persons who reside in your household;
c. liability assumed by you under any contract or agreement;
d. liability that arises while your insured property is being conveyed except at the point the vessel is hauled out of the water or launched;
e. fines or other penalties that any government unit requires you to pay;
f. punitive damages;
g. bodily injury or property damage arising out of parasailing or scuba diving;
h. claims for which you may be held liable as a result of the sale, dispensing or consumption of alcoholic beverages on board the vessel insured by this policy; these exclusions include liabilities arising out of:
   (1) violation of a law or regulation that governs the sale, gift, distribution or use of alcoholic beverages
   (2) the selling, serving or giving of alcoholic beverages to a minor, a person under the influence of alcohol, or a person who causes or contributes to the intoxication of any person;
i. swimmers and divers of any kind, if any, either while embarking, after leaving the vessel(s) to enter the water, while in the water, towed behind the insured vessel, or while boarding the vessel(s) on the return from the water; in addition, this policy excludes all liability for injury, death or accidents from or in connection with any sales, service or use of diving equipment of any kind, or in any manner connected with diving or swimming activities.

5

**LIMITS OF LIABILITY:** We will pay no more than the Part B: Liability Coverage limit, as shown on the Declaration Page for all damage or losses resulting from:
a. any one accident or occurrence;
b. any series of accidents or occurrences arising out of the same event; this is the most we will pay regardless of the number of covered persons involved, claims made, vessels or premiums shown on the Declarations Page or the number of vessels involved.

With respect to pollution or contamination of any kind, we will pay up to the Part B: Liability Coverage limit as shown on the Declarations Page, or $500,000, whichever is greater.

## PART C: MEDICAL PAYMENTS COVERAGE

**PERILS INSURED AGAINST:** We will pay for reasonable medical, ambulance, hospital, professional nursing and funeral costs that become necessary due to accidental bodily injury to persons injured while in, upon, boarding, leaving or towed behind your insured vessel. We will pay only for those costs incurred within one year of the date of accident.

**EXCLUSIONS:** We do not provide coverage under Part C: Medical Payments Coverage for:
a. any employee of yours injured while in the course of employment or while using, maintaining or repairing your insured property;
b. any responsibility for payment assumed by you under contract or agreement;
c. anyone who is injured while your insured property is being conveyed, hauled out or launched;
d. anyone to or for whom benefits are payable under any state or federal compensation law or act;
e. anyone who is injured while parasailing or scuba diving;
f. swimmers and divers of any kind, if any, either while embarking, after leaving the vessel(s) to enter the water, while in the water, towed behind the insured vessel, or while boarding the vessel(s) on the return from the water; in addition, this policy excludes all liability for injury, death or accidents from or in connection with any sales, service or use of diving equipment of any kind, or in any manner connected with diving or swimming activities.

**LOSS SETTLEMENT:** We will pay no more than the Part C: Medical Payments Coverage limit, as shown on the Declarations Page for all covered costs of each person injured as a result of any one accident or series of accidents arising out of the same event. Any payment made under Part C: Medical Payments Coverage shall reduce the amount payable under Part B: Liability Coverage or Part D: Uninsured Boater Coverage.

**MEDICAL PAYMENTS PROOF-OF-LOSS:** A written, sworn proof of loss must be filed with us by any person seeking payment by us under the Part C: Medical Payments Coverage, or by someone on his/her behalf. This proof-of-loss must include:
a. the name and address of each person and organization performing covered services;
b. the nature, extent and dates of these services; and
c. itemized charges and any sums already paid.

This proof-of-loss must be filed:
a. as soon as reasonably possible after completion of services;
b. as soon as reasonably possible after the cost of services being provided equals the amount of our liability under Part C: Medical Payments Coverage on the Declarations Page;
c. within one year of the date of the accident, whichever of the above occurs first.

**ADDITIONAL REQUIREMENTS:** Each person seeking payment by us under Part C: Medical Payments Coverage must:
a. submit to a physical examination by a physician selected by us when and as often as we reasonably require; we will pay for the cost of the examination; and
b. provide us with written authorization for release to us of copies of pertinent medical reports and records.

**ADMISSION OF LIABILITY:** Any payment made under this section is not an admission of liability by you or us.

**ABANDONMENT:** If we take any steps to protect damaged property, this does not mean we are accepting an abandonment of the property. And, if you take steps to protect damaged property, this does not mean you are waiving any rights you have to abandon the property.

**NOTICE OF LOSS:** You must report in writing to us, or our authorized agent, as soon as possible after the occurrence of any accident, loss, damage or expense that may be covered under this policy. This notice should state when, where and how the event occurred, and should include the names and addresses of any witnesses. You are also required to notify the police and file a police report as soon as you are aware that your property has been stolen or vandalized. If you do not provide the notice to us as required under this section as soon as possible, any claim for such loss under this policy will be voided.

**PROOF-OF-LOSS:** You must file with us, or our authorized agent, as soon as possible after our written request, a detailed proof-of-loss signed and sworn to by you setting forth to the best of your knowledge, the facts of the loss. We may also require you to submit to an examination under oath. See Part C: Medical Payments Coverage for special proof-of-loss requirements for medical payments claims.

**CLAIM OR SUIT AGAINST YOU:** If a claim is made or suit is brought against you for liability that may be covered under this policy, you must immediately notify us and send us every demand, notice, summons or other legal papers received by you or your representative. We will pay the ensuing cost of the suit. We will also have the option of naming attorneys to represent you. Payments for the cost of your legal defense will be in addition to payments we make under your coverage for liability claims against you.

**ASSISTANCE AND COOPERATION:** Any person making a claim must:
a. cooperate with us in the investigation, settlement or defense of any claim or suit under this policy;
b. assist us in the enforcement of any right of contribution or indemnity against any person or organization which may be liable to any covered person;
c. allow us to inspect and appraise all damaged property, not stolen or otherwise unrecoverable, before it is repaired or disposed of;
d. sign a written authorization permitting us to obtain medical files and other pertinent records;
e. submit, at our expense and as often as we reasonably require, to a physical examination by physicians we select and at the time and place we select;
f. not assume any obligation or admit any fault or liability that you or we may be liable for without first obtaining our written consent; and
g. not incur any expenses that we may be liable for without first obtaining our written consent; the only expenses you may incur without obtaining our written consent are those covered under Part C: Medical Payments Coverage of this policy, or as described in General Provisions In The Event Of Loss in the Protection Against Loss section.

**PAYMENT OF LOSS:** Unless a claim has been paid by others, we will pay for any loss covered under this policy within 30 days after both the detailed sworn proof of loss and proof of your interest in the insured property are given to us.

**OUR RIGHT TO RECOVER:**
a. if we make a payment under this policy and the person to or for whom payment was made has the right to recover from another for the covered loss, we will be subrogated to that right; that person will do whatever is necessary to enable us to exercise our rights and will do nothing after the loss to prejudice them;
b. if we make a payment under this policy and the person to or for whom payment is made, recovers damages from another, that person will hold the proceeds of the recovery for us and will reimburse us to the extent of our payment.

**SALVAGE:** If we have made payment under this policy for loss or damage, and if there is salvage or recovery as a result of that loss or damage, we have the right to recover that salvage or recovery to the extent of our payment.

11

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

Paradise Divers, Inc.

**DEFENDANTS**

ACE American Insurance Company

**(b)** County of Residence of First Listed Plaintiff   Monroe
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michelle M. Niemeyer, P.A.
3250 Mary Street, Ste. 302
Coconut Grove, FL 33133

Attorneys (If Known)

DEC 31 2008
STEVEN M. LARIMORE
CLERK U.S.
S.D. OF FLA. MIAMI

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☑ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) | |
|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State  PTF ☑1  DEF ☐1  Incorporated or Principal Place of Business In This State  PTF ☑4  DEF ☐4 | |
| ☐ 2 U.S. Government Defendant | ☑ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State  ☐2  ☑2  Incorporated and Principal Place of Business In Another State  ☐5  ☑5 | |
| | | Citizen or Subject of a Foreign Country  ☐3  ☐3  Foreign Nation  ☐6  ☐6 | |

KW 08cv 10116 - Martinez

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

| **V. ORIGIN** (Place an "X" in One Box Only) | | | | | | |
|---|---|---|---|---|---|---|
| ☑1 Original Proceeding | ☐2 Removed from State Court | ☐3 Re-filed- (see VI below) | ☐4 Reinstated or Reopened | ☐5 Transferred from another district (specify) | ☐6 Multidistrict Litigation | ☐7 Appeal to District Judge from Magistrate Judgment |

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☑ YES ☐ NO

JUDGE Michael Moore   DOCKET NUMBER 02-10054-CIV-Moore/O'Sull

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. 1332. This is an action for common law and statutory insurer bad faith.

LENGTH OF TRIAL via _5_ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ >$75,000 approx.1,600,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
December 30, 2008

FOR OFFICE USE ONLY
AMOUNT       RECEIPT #       IFP

Pending