UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Key West Division

**Case Number: 08-10116-CIV-MARTINEZ-BROWN**

PARADISE DIVERS, INC., a Florida
Corporation,

    Plaintiff,

vs.

ACE AMERICAN INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss **(D.E. No. 5)**.

### I. Factual Background

Paradise Divers, Inc. ("Paradise" or "Plaintiff") purchased a Recreational Marine Inspected Vessel Charter Policy ("the Policy") from CIGNA with effective dates from November 25, 1999 to November 25, 2000. Complaint ¶ 5. Defendant ACE American Insurance Company ("ACE" or "Defendant") is the successor in interest to CIGNA. Complaint ¶¶ 5, 9. Plaintiff purchased the policy through a trade organization to which it belonged, namely the Florida Association of Dive Operators ("FADO"). Complaint ¶ 10.

The Policy contained coverage for liability pursuant to the Jones Act or general maritime law for an unlimited number of paid crew members. Complaint ¶ 14. The exclusions for the liability coverage excluded "swimmers and divers of any kind." Complaint ¶ 15. Plaintiff paid

an additional premium for an endorsement entitled "Captain and Crew Limitation Endorsement." Complaint ¶ 17. It stated, "We will pay sums which you or a covered person becomes legally obligated to pay as a result of the ownership, operation or maintenance of the insured craft during this policy period, for liability to a captain or crew member provided for under the Jones Act or general maritime law." Complaint ¶ 18. The Captain and Crew Limitation Endorsement contained its own exclusions, but it did not include an exclusion for swimmers or divers. Complaint ¶ 19.

Plaintiff employed an individual named Kevin Upmal ("Upmal"), who worked as a crew member and acting First Mate onboard the vessel Paradise Diver IV on June 29, 2000. Complaint ¶ 26. While Plaintiff's customers were diving on the morning of June 29, 2000, Mr. Upmal suffered a shallow water blackout while snorkeling and was injured. Complaint ¶¶ 24-25.

Plaintiff contacted FADO and its insurance agent the day of Upmal's accident. Complaint ¶ 30. Both FADO and the insurance agent advised Plaintiff to contact Donna Albert ("Albert"). Complaint ¶ 30. Ms. Albert advised Plaintiff to identify draft reports as "work product" and to label correspondence as "attorney-client privileged." Complaint ¶ 31. Plaintiff was able to send faxes to Ms. Albert and Craig Jenni ("Jenni") care of FADO. Complaint ¶ 35. Plaintiff believed that Ms. Albert was an attorney who worked on behalf of FADO and its members and was serving as Plaintiff's lawyer. Complaint ¶ 32. Plaintiff believed that Craig Jenni was an investigator who worked with Ms. Albert at FADO's offices. Complaint ¶ 34. Believing Ms. Albert to be its attorney, Plaintiff confided in her, allowed her and Mr. Jenni access to its employees and records, followed her advice, and did not retain other legal counsel. Complaint ¶¶ 33-34. In fact, both Ms. Albert and Mr. Jenni were investigating the claim on

ACE's behalf, which Plaintiff asserts Ms. Albert and Mr. Jenni never told Plaintiff. Complaint ¶ 36.

Several weeks after Upmal's release from the hospital, medical providers began to bill Plaintiff for Upmal's treatment. Complaint ¶ 37. Ms. Albert advised Plaintiff not to pay the medical bills. Complaint ¶ 38. On Ms. Albert's advice, Plaintiff drafted a disclaimer letter and forwarded it to Ms. Albert for her approval. Complaint ¶¶ 39-40. She approved it, and Plaintiff mailed it to each medical provider that sought payment. Complaint ¶¶ 41-42. Shortly after the letters were sent out, Plaintiff stopped hearing from Ms. Albert. Complaint ¶ 44. When one of Plaintiff's employees called Ms. Albert, she informed Plaintiff that she could no longer represent Plaintiff. Complaint ¶¶ 45-46. Plaintiff then received written notification from an ACE claims adjuster disclaiming coverage for both indemnity and the duty to defend. Complaint ¶ 53. At that time, Upmal had not filed suit and his only demand was for the payment of his $45,000 medical bills. Complaint ¶ 54.

Eventually, when Upmal's credit began to suffer from unpaid medical bills, he filed suit against Plaintiff. Complaint ¶¶ 59, 61. ACE then filed suit seeking a declaratory judgment that Upmal's claim was not covered under the policy. Complaint ¶ 65. On June 12, 2003, summary judgment was granted against ACE on the declaratory judgment action. Complaint ¶ 75.

In the meantime, another insurance company, CNA, which provided a policy to the captain of Plaintiff's vessel, shouldered some of the costs of the Upmal litigation and ultimately paid $500,000 to settle some of the claims. Complaint ¶¶ 69, 74, 79, 87.

After summary judgment was granted against ACE in the declaratory judgment action, ACE replaced Plaintiff's counsel in the Upmal litigation over Plaintiff's objections. Complaint

¶¶ 78, 81-83. Plaintiff asserts that the addition of new counsel made Upmal less willing to settle. Complaint ¶ 85. Because of continuing conflicts with ACE, Plaintiff continued to retain its private counsel in addition to the counsel provided by ACE. Complaint ¶ 86. After several additional months of litigation, ACE settled Upmal's remaining claim against Plaintiff. Complaint ¶ 88.

Plaintiff asserts that the suit by its crew member harmed its reputation and its ability to attract and retain referral business. Complaint ¶ 89. Plaintiff further asserts that the litigation caused Plaintiff to have to close its business at times for depositions, mediation, and similar events. Complaint ¶ 90. Plaintiff asserts that ultimately it become unable to continue its business and closed. Complaint ¶ 91.

Plaintiff's complaint asserts two causes of action. The first is entitled "Statutory Bad Faith." Plaintiff asserts this claim on its own behalf, alleging that it suffered lost revenues, costs, and attorney's fees, as well as the ultimate loss of its business, due to ACE's bad faith in handling Upmal's claim. Complaint ¶ 101. Plaintiff also asserts the claim on behalf of CNA, which Plaintiff asserts has assigned its rights against ACE to Plaintiff. Complaint ¶ 98; (D.E. No. 1 Exh. 4). Plaintiff asserts that CNA suffered damages of $750,000 in litigating and settling Upmal's claim. Complaint ¶ 102. Plaintiff asserts that all conditions precedent to this action have been fulfilled. Complaint ¶ 103.

Plaintiff's second cause of action is entitled "Breach of Fiduciary Duty/Common Law Bad Faith." Plaintiff asserts that ACE's acts and omissions in handling Upmal's claim breached its fiduciary duty to Plaintiff and constituted a continuous course of deliberate, overt and dishonest dealing toward Plaintiff. Complaint ¶¶ 104, 107-9.

## II. Standard

Notice pleading under Federal Rule of Civil Procedure 8(a)(2) requires only that the pleadings provide a "short and plain statement of the claim" sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). A motion to dismiss should be granted if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1965. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

## III. Analysis

A.   **The Claims**

1.   <u>Statutory Bad Faith</u>

The Court first notes that Plaintiff's claim for "Statutory Bad Faith" derives from Fla. Stat. § 624.155.[2] "Section 624.155 of the Florida Statutes was designed and intended to provide

---

[2] Fla. Stat. § 624.155 provides in part that:

(1) Any person may bring a civil action against an insurer when such person is damaged:
(a) By a violation of any of the following provisions by the insurer:
    1. Section 626.9541(1)(I), (o), or (x);

a civil remedy for any person damaged by an insurer's conduct, including '[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.'" *Allstate Indemnity Co. v. Ruiz*, 899 So.2d 1121, 1124 (Fla. 2005) (quoting Fla. Stat. § 624.155(1)(b)(1)).

Section 624.155 does not preempt the pre-existing common law cause of action for bad faith. Fla. Stat. § 624.155(8). The statute does provide, however, that a "person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies." Fla. Stat. § 624.155(8). A party need not elect which of the two he is proceeding under at the pleading stage, but must choose between them prior to judgment. *Dunn v. National Sec. Fire and Cas. Co.*, 631 So.2d 1103, 1106 (Fla. 5th DCA 1993). Thus, the Court will construe Plaintiff's common law bad faith claim as being

---

       2. Section 626.9551;
       3. Section 626.9705;
       4. Section 626.9706;
       5. Section 626.9707; or
       6. Section 627.7283.
(b) By the commission of any of the following acts by the insurer:
    1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;
    2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
    3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
Notwithstanding the provisions of the above to the contrary, a person pursuing a remedy under this section need not prove that such act was committed or performed with such frequency as to indicate a general business practice.

pled in the alternative.

2.   Common Law Bad Faith

Even before the passage of Fla. Stat. § 624.155, Florida common law provided a right of recovery in a third-party bad faith action against an insurer. "[Common law t]hird-party bad faith actions arose in response to the argument that there was a practice in the insurance industry of rejecting without sufficient investigation or consideration claims presented by third parties against an insured, thereby exposing the insured individual to judgments exceeding the coverage limits of the policy while the insurer remained protected by a policy limit." *Id.* at 1125. "At common law in Florida, the essence of a bad faith cause of action against an insurance company (whether brought by the insured or the injured party), is that the insurer breached its fiduciary duty owed to its insured by wrongfully refusing to defend its insured in a liability context, or by wrongfully refusing to settle the case within the policy limits, and exposing its insured to a judgment which exceeds the coverage provided by the policy." *Dunn v. National Sec. Fire and Cas. Co.*, 631 So.2d 1103, 1106 (Fla. 5th DCA 1993). Having examined the allegations in Plaintiff's complaint, the Court concludes that Plaintiff's second claim, entitled "Breach of Fiduciary Duty/Common Law Bad Faith," is one for common law bad faith, not for breach of fiduciary duty. *See Wachovia Ins. Services, Inc. v. Toomey*, 994 So.2d 980 (Fla. 2008) (finding that when an insured asserted a claim for breach of fiduciary duty against an insurance broker, "the breach of fiduciary duty claim appears to actually be a 'bad faith' claim. . .").

Defendant asserts that Plaintiff's claims should be dismissed for three reasons. First, Defendant asserts that the complaint fails to state a valid claim on behalf of CNA/Colombia, because Defendant owes no duty of good faith to CNA. Second, Defendant asserts that the

complaint fails to state a cause of action for third party bad faith because it does not allege the existence of any damages in excess of the policy limits. Finally, Defendant asserts that the complaint fails to meet the requirements of Federal Rule of Civil Procedure 8(a)(2). The Court will consider Defendant's Rule 8 argument in the context of discussing the other issues in the complaint.

B.   **CNA/Colombia's Claim**

Plaintiff has asserted that CNA/Colombia has a valid claim for statutory bad faith under Fla. Stat. § 624.155, because the statute provides that "any person" may bring a civil action against an insurer who violates its provisions.[3] Plaintiff has not, however, specified what provisions of the statute Defendant violated with respect to CNA/Colombia.

The Court notes initially that CNA/Colombia may not recover pursuant to the provisions contained in Fla. Stat. § 624.155(1)(b). Subsection (1)(b)1 requires that an insurer act "fairly and honestly toward *its insured* and with due regard for *her or his* interests." Fla. Stat. § 624.155(1)(b)1 (emphasis added). Defendant ACE did not have a statutory duty to act fairly and

---

[3] In Florida, an insurer who provides coverage to an insured for liability in excess of the primary insurer's policy limits may bring an action for bad faith against the primary insurer under a theory of equitable subrogation. *U.S. Fire Ins. Co. v. Morrison Assur. Co.*, 600 So. 2d 1147 (Fla. 1st DCA 1992); *Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So.2d 272 (Fla. 1st DCA 1980). In contrast, when two insurance companies both have a duty to defend a mutual insured, and neither company is an excess carrier, the insurance company that paid for the litigation and settlement does not have the right to recover from the other insurance company under a theory of subrogation. *Argonaut Ins. Co. v. Maryland Cas. Co.*, 372 So.2d 960 (Fla. 3d DCA 1979). According to the facts asserted in the complaint, CNA/Colombia was not an excess carrier. In its response to Defendant's motion to dismiss, Plaintiff has acknowledged that it is not seeking to recover on CNA/Colombia's bad faith claim pursuant to a theory of equitable subrogation. Therefore, law regarding equitable subrogation does not apply to this case. Instead, Plaintiff has asserted that CNA/Colombia has its own cause of action for bad faith to assert under the terms of the statute, without resorting to a theory of equitable subrogation.

honestly toward CNA/Colombia. Indeed, the Florida Supreme Court has ruled that only damages caused to the insured are recoverable under subsection (1)(b)1, and that third parties cannot prove those damages in the absence of a judgment in excess of policy limits. *State Farm Fire & Cas. Co. v. Zebrowski*, 706 So.2d 275, 277 (Fla. 1997). Plaintiff has not alleged that there was a judgment in excess of policy limits. Therefore, CNA/Colombia has not alleged a cause of action under subsection (1)(b)(1). Similarly, "subsection (1)(b)2 speaks only of payments to insureds or beneficiaries, and subsection (1)(b)3 excludes liability coverage altogether." *Zebrowski*, 706 So.2d at 277. Accordingly, CNA/Colombia cannot bring a statutory claim under any portion of subsection (1)(b). *See id.*

On the other hand, "[i]n subsection (1)(a), there are no specified limitations upon claims for violation of any of the enumerated statutes." *Zebrowski*, 706 So.2d at 277. There are, however, six enumerated statutes, one of which includes three different subsections, each of which describes a different set of prohibited actions. *See* Fla. Stat. § 624.155(1)(a). There is no indication of which factual claims in the complaint pertain to the claim asserted by Plaintiff in CNA/Colombia's stead. Indeed, CNA/Colombia's statutory claim does not even get its own separate count, despite the fact that, as discussed above, CNA/Colombia cannot assert the same type of statutory claim that Paradise can. In short, the complaint is vague with respect to what the legal and factual basis of the claim asserted on behalf of CNA/Colombia is. Accordingly, the Court concludes that the complaint has not "give[n] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Thus, Plaintiff has not complied with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The Court will, however, permit Plaintiff to amend its complaint to

state with more clarity the distinct factual and legal bases for the statutory claims asserted by it and CNA/Colombia.

C.      **Effect of Lack of Judgment in Excess of Policy Limits**

The complaint states that Defendant ACE paid to settle Upmal's claim and does not allege that this settlement exceeded the policy limits. Defendant asserts that Plaintiff cannot assert a claim for statutory or common law bad faith because Plaintiff has not alleged that it or CNA/Colombia suffered recoverable damages. More specifically, Defendant asserts that Plaintiff cannot recover without alleging that the underlying suit exposed Plaintiff to liability in excess of policy limits.

In Florida, a bad faith claim against an insurer sounds in contract, not tort. *Government Employees Ins. Co. v. Grounds*, 332 So.2d 13 (Fla. 1976). Accordingly, "the damages for the insurer's breach of its contractual duty to its insured are limited to those that can be said to have been contemplated by the parties at the time of the formation of the insurance contract." *Swamy v. Caduceus Self Ins. Fund, Inc.*, 648 So.2d 758, 760 (Fla. 1st DCA 1994). Therefore, "although payment of the excess judgment obtained against an insured may satisfy the provable damages in most cases, it is not the sole measure of damages in bad faith cases." *Dunn*, 631 So. 2d at 1106 (citing *McLeod v. Continental Insurance Co.*, 591 So.2d 621 (Fla. 1992); *Adams v. Fidelity & Casualty Co. of New York*, 591 So.2d 929 (Fla. 1992)). Punitive damages, attorney's fees, and other direct consequential damages can be recovered. *Id.* " If the rule were otherwise, it would permit an insurance company to flagrantly disregard its insured's interests, and when a bad faith suit is brought, to destroy the cause of action by paying the judgment, despite other resulting damages." *Id.* In this case, although Defendant has paid the underlying judgment, the Complaint

alleges that Plaintiff suffered and is entitled to additional damages, such as attorney's fees, based upon Defendant's failure to settle the case in a timely manner. The Court concludes that the Complaint has alleged recoverable damages.

To the extent that Defendant is asserting that liability in excess of the policy limits is a part of the prima facie case for bad faith, the Court does not agree. Although selective quotations from some Florida cases, taken out of context, may implicitly support that view, there is no statutory language or case law explicitly holding that a Plaintiff must allege he was exposed to liability in excess of policy limits in order to recover. *See* Fla. Stat. § 624.155; *Cunningham v. Standard Guar. Ins. Co.*, 630 So.2d 179, 181 (Fla. 1994). Although it is not dispositive, the Florida Civil Standard Jury Instructions for an insurer's bad faith failure to settle do not instruct the jury to consider whether or not the plaintiff was exposed to liability in excess of the limit. *See* Fla. Standard Jury Instructions in Civil Cases (2007) at MI.3. Instead, the relevant instruction requires the jury to determine "whether (defendant) acted in bad faith in failing to settle the claim [of] [against] (insured). An insurance company acts in bad faith in failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward [its policyholder] [its insured] [an excess carrier] and with due regard for [his] [her] [its] [their] interests." *Id.* Accordingly, the Court concludes that Plaintiff's failure to assert that Defendant's actions exposed it to liability in excess of policy limits does not warrant dismissing its claims. Therefore, after careful consideration, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant's Motion to Dismiss **(D.E. No. 5)** is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to Count I and **DENIED** in all other

respects. Plaintiff may file an amended complaint within ten (10) days of the entry of this Order correcting the deficiencies noted in this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 6 day of January, 2010.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record